Thomas Flexible Coupling Co. v. Commissioner.
Thomas Flexible Coupling Co. v. Commissioner
Docket Nos. 110799, 257.
United States Tax Court
1944 Tax Ct. Memo LEXIS 227; 3 T.C.M. (CCH) 620; T.C.M. (RIA) 44190; May 31, 1944
*227 Robert Ash, Esq., Munsey Bldg., Washington, D. C., for the petitioner. Jonas M. Smith, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In docket No. 110799 the respondent has determined a deficiency of $2,175.94 in petitioner's "excess profits liability on navy contracts and/or subcontracts under section 3 of the Act of March 27, 1934 (48 Stat. 505), as amended * * *" (Vinson Act) for the year ended December 31, 1939. In docket No. 257 the respondent has determined the following deficiencies: Year
Tax
Amount
1940
Income
$8,951.72
1940
Declared value excess-profits
3,534.06
1940
Excess-profits
4,137.38
1941
Income
8,055.96
1941
Excess-profits
44,134.60
The sole issue presented herein is whether petitioner was entitled to deduct from its gross income certain amounts paid as "royalties" to Bertha E. Thomas. Findings of Fact Petitioner is a Pennsylvania corporation, and filed its report of profit on Navy contracts for 1939 and its income and excess-profits tax returns for 1940 and 1941 with the collector of internal revenue for the twenty-third district of Pennsylvania at Pittsburgh. It is engaged in the business of manufacturing and selling *228 flexible couplings and, in some instances, the component parts of such couplings. This coupling is a device for connecting a driving shaft with a driven shaft in such a manner as to compensate for angular and parallel misalignment and provide free and float without setting up cross pull or end thrust on the bearings. The Thomas coupling is the only flexible coupling which will support weight while transmitting torque and at the same time provide flexibility. The petitioner corporation was organized in 1917. Its president is Millard T. Thomas, who has been engaged in the coupling business since 1914. Bertha E. Thomas, wife of Millard T. Thomas, secured on the dates indicated below three patents, on flexible couplings, numbered as follows: Patent No. 1,323,423
December 2, 1919
Patent No. 1,325,545
December 23, 1919
Patent No. 1,326,993
January 6, 1920
At the time of the third annual meeting of its stockholders, held January 6, 1920, Millard T. Thomas owned 325 and Bertha E. Thomas 25 shares of the total of 492 represented at the meeting. The president of the corporation announced at that meeting that Mrs. Thomas declined to renew the manufacturing agreement in force *229 during 1919, under Patent No. 1,325,545 and had made the following proposition: "Proposition by Bertha E. Thomas to the Thomas Flexible Coupling Company, viz: That for and in consideration of four hundred and fifty (450) shares of the capital stock of said corporation, and the payment to her quarterly of a royalty fee of ten per cent (10%) of the total amount of the gross sales of said Simplex coupling during the life of the patent, she will assign to said corporation U.S. Letters Patent number 1,325,545, issued to her on December 23, 1919, for Flexible Coupling, saving and reserving to herself, her executors, administrators and assigns, the exclusive right, under said patent, to manufacture and sell flexible couplings for use on motor vehicles of any description. A further condition of the assignment of said patent is that in the event of the Thomas Flexible Coupling Company increasing its capital stock at any time, said Bertha E. Thomas shall participate in such increase to the extent of the receiving without further consideration fifty per cent (50%) of the increase of the capital stock." This proposition was accepted by the corporation at the same meeting in the following language: *230 "Resolved by the stockholders of the Thomas Flexible Coupling Company that the proposition of Bertha E. Thomas just read be accepted and recorded in the minutes of this meeting; and that the Board of Directors be authorized hereby to purchase said U.S. Patent upon the conditions named in said proposition, and to issue four hundred and fifty shares of the capital stock of said corporation to said Bertha E. Thomas, and to pay to her ten per cent (10%) of the total amount of the gross sales of said coupling during the life of said patent, with the understanding and agreement that in the event of any further increase in the capital stock of said corporation she shall receive without further consideration fifty per cent of such increase, in payment for the assignment from said Bertha E. Thomas to said Corporation." On March 20, 1920, the following contract was entered into between the petitioner and Bertha E. Thomas with reference to the other two patents referred to above: "THIS AGREEMENT, made this 20th day of March, 1920, between the Thomas Flexible Coupling Company of Warren, Pennsylvania, a corporation organized under the state of Pennsylvania, party of the first part, and Bertha *231 E. Thomas, of Erie, Pennsylvania, party of the second part. "WITNESSETH: That the party of the second part having assigned to the party of the first part all of her rights, title and interest in and to United States Letters Patent No. 1,323,423 dated December 2, 1919, and No. 1,326,993, dated January 6, 1920, together with all improvements upon the invention there described and claimed; the party of the first part for and in consideration of the sum of one dollar and certain other good and valuable considerations, hereby grants to the party of the second part, her heirs and assigns, the sole and exclusive right to make and sell and to have made and sell under the aforesaid Letters Patents and all improvements on said patents which she may make or hereafter acquire on flexible couplings to be used in connection with automobiles, trucks and tractors, territory not limited. "The party of the first part also grants to the party of the second part a sole and exclusive license, territory not limited to manufacture and sell or to have manufactured and sell flexible couplings under any patents which it may now own or hereafter acquire, to be used in connection with and on automobiles, trucks *232 and tractors only, the party of the first part reserving the right to manufacture and sell or to have manufactured and sell flexible couplings for all purposes other than for application to automobiles, trucks and tractors. "The party of the first part also grants unto the said party of the second part the right to grant and sell sub-licenses thereunder to manufacture and sell flexible couplings to be used in connection with or on automobiles, trucks and tractors without the consent of the party of the first part. "This contract made in duplicate between the party of the first part and the party of the second part for the mutual consideration expressed conveys to the party of the second part an exclusive license to manufacture and sell or have manufactured and sell flexible couplings to be used in connection with or on automobiles, trucks and tractors only, in consideration of the assignment by the party of the second part of all United States Letters Patents she now owns on flexible couplings and which may be hereafter granted to her and all United States Letters Patents on future improvements on flexible couplings which may be obtained or acquired by her. "IN WITNESS WHEREOF, *233 the parties of the first and second part have respectively set their hands and seals this twentieth day of March, 1920." The 450 shares of stock provided for at the annual meeting held January 6, 1920, were issued to Mrs. Thomas, after the authorized capital of the corporation was increased for that purpose and payments, denominated "royalties", amounting to ten percent of the gross sales price, were thereafter made to Mrs. Thomas throughout the life of the patent referred to in this agreement, and after its expiration until early in 1939, after which a different arrangement was made, which will be set forth later in these findings. On September 2, 1937, Mrs. Thomas applied for a patent for an improvement in flexible couplings, consisting of (1) the arrangement of the metal discs in the flexible laminated ring in a flexible coupling so that the grain of the metal in adjacent discs is in angular relation and at a predetermined angle, and (2) an improvement in the design of washers and bosses used in flexible couplings. This invention was assigned by Mrs. Thomas to the petitioner and the patent therefor was issued to petitioner on December 5, 1939, numbered 2,182,711. On *234 August 8, 1939, Mrs. Thomas applied for a patent relating to an emergency support for flexible couplings. The patent was granted August 8, 1941, and is number 2,251,722. These two inventions were assigned by the same instrument in writing, dated October 26, 1939, recorded in the United States Patent Office on October 27, 1939, which reads as follows: "WHEREAS, [*] BERTHA E. THOMAS, of Warren, County of Warren, and State of Pennsylvania, have invented certain new and useful improvements in Flexible Couplings for which I have filed applications for Letters Patents of the United States, described as follows: - FLEXIBLE COUPLINGS, Serial No. 162,205 Filed September 2, 1937 Allowed October 10, 1939 EMERGENCY SUPPORTS FOR FLEXIBLE COUPLINGS Serial No. 289,058, filed August 8, 1939 "AND WHEREAS, THOMAS FLEXIBLE COUPLING COMPANY, a corporation organized under the laws of the State of Pennsylvania and domiciled and having its post office address at said Warren, is desirous of acquiring the entire interest in and to the said inventions and applications, and in and to any patent or patents to be obtained thereon: - "NOW THEREFORE, be it known that for and in consideration of the sum *235 of Five Dollars ($5.00), the receipt of which is hereby acknowledged, and other good and valuable considerations, I, the said BERTHA E. THOMAS, by these presents do sell, assign and transfer unto the said THOMAS FLEXIBLE COUPLING COMPANY, its legal representatives, successors and assigns, the full and exclusive right for the territory of the United States of America and for all foreign countries, in and to the said inventions in Flexible Couplings, and in and to the applications filed as aforesaid September 2, 1937, Serial No. 162,205 and August 8, 1939, Serial No. 289,058, and in and to any patent or patents issued therefor and thereon, together with all divisions, renewals, continuations and reissues thereof; said inventions, applications and Letters Patents to be held and enjoyed by the said THOMAS FLEXIBLE COUPLING COMPANY, for its own use and behoof, and for its legal representatives, successors and assigns, to the full end of the terms for which Letters Patents may be granted as fully and entirely as the same would have been held by me had this assignment and sale not been made. "AND I FURTHER STIPULATE AND AGREE that I will at the request and charge of the said THOMAS FLEXIBLE *236 COUPLING COMPANY, its legal representatives, successors and assigns, do all other lawful and just acts that may be or become necessary for the purpose of obtaining Letters Patents of the United States as aforesaid and to perfect its title thereto. "Executed this 26th day of October, 1939. On November 26, 1939, Mrs. Thomas and the petitioner executed the following contract: "THIS AGREEMENT made and entered into this 26day of November, 1939, by and between the Thomas Flexible Coupling Company, a corporation existing under and by virtue of the laws of the State of Pennsylvania, having its principal place of business at 1200 Main Avenue, Warren, Pennsylvania, hereinafter referred to as "Company" and Bertha E. Thomas of No. 9 Second Avenue, Warren, Pennsylvania, thereinafter referred to as "Inventor". "WITNESSETH, THAT: "WHEREAS, 'Inventor' has conceived of and produced inventions relating to flexible couplings, as more particularly set forth in applications filed in the United States Patent Office and identified as follows: - Flexible Couplings Serial No. 162,205 Filed September 2, 1937 Allowed October 10, 1939 Emergency Supports for Flexible Couplings Serial *237 No. 289,058 Filled August 8, 1939 "WHEREAS, 'Inventor' has, or may have, other new and useful improvements and ideas relating to flexible couplings. "WHEREAS, 'Company' is desirous of securing assignment of the inventions and proprietary rights of 'Inventor' in and to the above identified applications for United States patents, and in and to the inventions set forth therein, and to any inventions relating to flexible couplings which the 'Inventor' may hereafter make. "NOW, THEREFORE, for and in consideration of the sum of Three Thousand Five Hundred Dollars ($3500.00) paid by 'Company' to 'Inventor,' receipt whereof is hereby acknowledged by 'Inventor' and other good and valuable considerations hereinafter mentioned, it is mutually understood and agreed as follows: - "Article 1. Nventor' agrees at 'Company's' request, to execute in 'Company's' favor, all papers which may be necessary for the transfer, by complete assignment, of all of 'Inventor's' proprietary rights in and to the above identified applications for letters patent in the United States, and of all proprietary rights in and to any inventions which 'Inventor' may now have or make in the future relating to flexible *238 couplings, on the terms and under the conditions as hereinafter provided. "Article 2. 'Inventor' agrees at 'Company's' request, to make and execute and have filed in the United States Patent Office, and in the respective offices of foreign countries, applications for patents on such of 'Inventor's' inventions relating to flexible couplings, as may be deemed advisable by 'Company.' "Article 3. 'Company' agrees to keep a true and accurate record of the exact number of flexible couplings and discs manufactured and sold by it, together with the invoicing price of all such couplings and discs as are sold, and to render to 'Inventor' monthly reports (under oath if requested by 'Inventor') setting forth the number of flexible couplings and discs sold by it embodying any of 'Inventor's' inventions. 'Company' hereby agrees to permit 'Inventor', or her duly authorized and accredited representative, to examine its records at all reasonable times to verify such reports. "Article 4. 'Company' shall pay to 'Inventor' a royalty in amount of 6% of the invoicing price of all complete couplings sold by 'Company', or by any of 'Company's' licensees; said royalty to be payable monthly in conformity *239 to the reports set forth in the immediately preceding article. "Article 5. 'Company' shall pay to 'Inventor' a royalty in amount of 20% of the invoicing price of all coupling discs based on the repair price list of discs ordered as repair parts, whether such discs are manufactured by 'Company', or 'Company's' licensees. "Article 6. 'Company' shall pay to 'Inventor' a royalty in amount of 33 1/3% of the invoicing price of all coupling discs sold separately, where the customer makes the other parts of the coupling, whether such discs are manufactured by 'Company', or 'Company's' licensees. "Article 7. The minimum royalty to be payable monthly in conformity with the immediately preceding Articles 4, 5, and 6 shall not be less than "Two Hundred Fifty Dollars ($250.00) and in default thereof the 'Inventor' may at her election cancel this agreement. "Article 8. This agreement shall become effective as of the eighth day of May, 1939, which is the first date on which the United States patent Examiner held that the claims covering discs in application Serial No. 162,205 appeared to be allowable, and shall continue in full force and effect until the expiration of any United States patent *240 which may issue on the aforesaid application Serial No. 162,205. "Article 9. 'Inventor' agrees to promptly disclose to 'Company' any and all inventions made or acquired by 'Inventor' during the life of this agreement with respect to flexible couplings, and agrees to make a prompt and complete assignment to 'Company' of her entire title, right and interest in and to any inventions or patentable improvements which she may make or acquire in the future with respect to flexible couplings. Provided however, that 'Inventor' will be adequately compensated for any such inventions which 'Company' may at its discretion acquire from 'Inventor'. "Article 10. 'Inventor' agrees to assign to 'Company' her entire title, right and interest in and to any pending applications, patents, or applications which may be filed in the future and in and to any inventions therein set forth which relate in any way to flexible couplings. "Article 11. 'Inventor' agrees that 'company' shall have the complete control and regulation as to filing and prosecution of application for patents in the United States and foreign countries, upon any of 'Inventor's' present or future inventions relating to flexible couplings. *241 "Article 12. 'Company' agrees to assume all financial expenditures necessary to prepare and prosecute 'Inventor's' patent applications as herein outlined, and agrees to bear all expenses incidental to the upkeep of patent applications and patents issued thereon, such as payment of Government taxes, fees, maintenance and normal working expenses. "Article 13. It is understood that 'Company' shall have exclusive control of the prosecution of suits against infringers and shall be entitled to retain all proceeds as a result of such suits, subject to payment of royalties in proportion to the royalties herein outlined. "IN WITNESS WHEREOF, the parties hereto have, on the date first above written, caused these presents to be signed by 'Inventor' personally, and by 'Company' in its corporate name by its duly authorized officer and its corporate seal affixed hereunto." On December 5, 1939, and August 5, 1941, Patents #2,182,711 and #2,251,722 were issued to Thomas Flexible Coupling Company pursuant to the assignment set out above. Any license to make or sell under letters patents on flexible couplings to be used in connection with automobiles, trucks and tractors was without value on October *242 26, 1939 and November 26, 1939. The method of dialing the discs, as covered by Patent No. 2,182,711 has the advantage of equalizing the flexibility and torsional strength of the ring, increasing the impact strength, torque capacity and resistance to fatigue. Engineers recognize the advantage of the dialing arrangement of the discs, and their approval helps to sell the product. The Thomas method of disc assembly is used on all couplings made by petitioner, the emergency support, covered by Patent No. 2,251,722, is not used very often, but has important advantages where its use is indicated. The latter is designed to prevent damage to the generator in the event of failure of the coupling. The payments made, after the execution of the contract of November 26, 1939, were made in accordance with its terms, and the amounts so paid and which are here in controversy are $4,672 in 1939, $37,151.04 in 1940 and $65,672.10 in 1941. Opinion KERN, Judge: Respondent's primary contention is to the following effect: In January 1920 Bertha E. Thomas sold and assigned to petitioner Patent No. 1,325,545, which had to do with flexible couplings, reserving to herself the right, under the patent, to *243 manufacture and sell flexible couplings for use on motor vehicles. In consideration therefor petitioner issued to Mrs. Thomas 450 shares of its stock, and agreed to pay her as "royalties" 10 percent of the gross sales of its products. At some time prior to March 20, 1920, Bertha E. Thomas had assigned to petitioner patents No. 1,323,423 and No. 1,326,993, which also had to do with couplings, but had not reserved to herself the right to manufacture and sell under these patents couplings for use in motor vehicles as she had done in her assignment of January 1920. On March 20, 1920, Bertha Thomas and petitioner entered into an agreement whereby petitioner, then the owner of the patents referred to, granted to Bertha Thomas the "exclusive license to manufacture and sell * * * flexible couplings to be used in connection with or on automobiles, trucks and tractors only, in consideration of the assignment by [Bertha Thomas] of all United States Latters Patents she now owns on flexible couplings and which may be hereafter granted to her and all United States Letters Patents on future improvements on flexible couplings which may be obtained or acquired by her." The two patents directly involved *244 in this proceeding were applied for by Bertha Thomas, and were issued on December 5, 1939, and August 5, 1941, to petitioner pursuant to Bertha's prior assignment hereinafter mentioned, the first being Patent No. 2,182,711 and the second being Patent No. 2,251,722. Applications for these patents were filed on September 2, 1937, and August 8, 1939, respectively. They both covered improvements in flexible couplings. On October 26, 1939, Bertha Thomas "for and in consideration of the sum of Five Dollars ($5.00) * * * and other good and valuable consideration" assigned to petitioner her rights in and to the inventions covered by the applications and any patents issued therefor and thereon. This assignment was recorded in the United States Patent Office on October 27, 1939. Thus, when petitioner and Bertha Thomas executed the agreement of November 26, 1939, providing for the payment of the "royalties" here in question in return for the assignment to petitioner of Bertha's rights to the patents applied for by her and any patents issued therefor and thereon, petitioner already was the owner of these patent rights by virtue of the assignment of October 26, 1939, and was entitled to the assignment *245 of the patents here involved by reason of its contract with Bertha executed under date of March 20, 1920, her obligation, therein set out, to assign all patents on future improvements on flexible couplings which might be acquired by her being supported by the consideration recited in the 1920 agreement. Therefore, being already the owner of all patent rights of Bertha in and to the patents applied for on September 2, 1937, and August 8, 1939, and being entitled thereto by the contract of March 20, 1920, petitioner was under no legal obligation to make additional payments therefor, and consequently, the payments provided for in the contract of November 26, 1939, and made purportedly pursuant thereto were not ordinary and necessary business expenses, and therefore were not deductible from petitioner's gross income. We agree with this contention. Petitioner was entitled to "all United States Letters Patents on future improvements on flexible couplings which may be obtained or acquired by [Bertha E. Thomas]", by the terms of the March 20, 1920, contract. This contract was supported by adequate consideration. In addition to the consideration recited in the contract Bertha E. Thomas was *246 a large stockholder of petitioner and was interested in the profits arising from the business in which the inventions were used. As was stated by Mr. Justice Bradley in Aspinwall Manufacturing Co. v. Gill, 32 F. 697: * * * where a man purchases a particular machine secured by a patent, and open to an indefinite line of improvements, it is often of great consequence to him that he should have the benefit of any future improvements that may be made to it. Without that, the whole value of the thing may be taken away from him the next day. A better machine might be made by the inventor, and sold to another party, which would make the machine acquired by the first purchaser entirely useless. These things happen every day. And hence it has become the practice, in many cases, to stipulate for all future improvements that may be made by the same inventor upon any particular machine which he induces a party to purchase from him, sometimes by way of license to use such improvements, and sometimes by way of purchase and ownership thereof. Where the inventor is connected in business with the party making such stipulation, or is interested in the profits arising *247 from the business in which the invention is used, the arrangement seems to be altogether unobjectionable. But such a connection or interest does not seem to be necessary to the validity of such bargains. If based upon a valuable consideration, they are sustained as collateral or incidental stipulations connected with the conveyance of a principal subject. See also Dry Ice Corporation v. Josephson, 43 F.2d 408, 416. There is no question but that the two patents directly involved here and for which the purported royalties were paid, the deduction of which is here in question, were on improvements in flexible couplings, and thus come squarely within the terms of the March 20, 1920, agreement. Likewise, there is no question but that the agreement of Bertha E. Thomas to assign patents on future improvements on flexible couplings was supported by adequate consideration, or that Bertha E. Thomas was a large stockholder of petitioner. Thus, petitioner was entitled without further payment to any patents which might be issued to Bertha on any such improvements. Dry Ice Corporation v. Josephson, supra;Conway v. White, 9 F.2d 863; *248 Piggly Wiggly Corporation v. Saunders, 1 F.2d 572; Fairchild v. Dement, 164 F. 200; Goodyear Tire & Rubber Co. v. Miller, 22 F.2d 353. Since petitioner was entitled to the patents here in question without further payment, and the patents were already assigned to it under date of October 26, 1939, the petitioner was under no legal obligation to make the payments to Bertha E. Thomas as set out in the agreement of November 26, 1939. Voluntary payments made in the absence of an existing obligation are not "ordinary and necessary expenses paid or incurred * * * in carrying on a trade or business." See Mertens, Law of Federal Income Taxation, § 25.12 and cases cited. The promise to do something which the party making the promise is already legally obligated to do is not good consideration. Williston on Contract, Rev. Ed., Vol. I, Sec. 130; 17 Corpus Juris Secundus, Sec. 110. Therefore, the promise to make payments executed in consideration of the promisee's agreement to do something which he is already legally obligated to do or which he has already done pursuant to a pre-existing *249 legal obligation, is not a valid legal obligation and the payments, if made, are not in the usual case ordinary and necessary business expenses. Here petitioner was under no legal obligation to make the payments in question and nothing is shown which would indicate some exceptional business necessity to make the payments. We conclude that the payments of so-called "royalties" by petitioner to Bertha E. Thomas during the taxable years were not deductible. One of the questions argued extensively by both parties is whether the payments to Bertha E. Thomas as "royalties" were reasonable in amount. In view of our conclusion that they were not ordinary and necessary business expenses and therefore not deductible, it is immaterial whether they were reasonable or unreasonable in amount. Decision will be entered for the respondent.