**COMMISSIONER OF INTERNAL REV-
ENUE v. THOMAS FLEXIBLE
COUPLING CO.**

**Nos. 10415, 10416, 10417 and 10418.**

United States Court of Appeals
Third Circuit.

Argued April 7, 1952.

Decided Aug. 5, 1952.

Carlton Fox, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., Lee A. Jackson, Special Asst. to the Atty. Gen., on the brief), for petitioner.

Frank A. Moorshead, Philadelphia, Pa. (John P. Hilferty, H. E. Potter, Philadelphia, Pa., on the brief), for respondent-appellee.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Tax Court holding that in determining the taxpayer's income, excess profits and declared value excess profits tax liability for the years 1942, 1943 and 1944 certain royalty payments made by the taxpayer to Mrs. Bertha E. Thomas during those years were ordinary and necessary business expenses deductible under Section 23(a)(1) (A) of the Internal Revenue Code, 26 U.S.C. The principal question presented to us on review is whether the taxpayer was estopped by a prior adverse decision of the Tax Court filed May 31, 1944, and affirmed by this court, 158 F.2d 828, which involved the tax years 1939, 1940 and 1941, from claiming that the royalty payments in question were deductible as ordinary and necessary business expenses.

The basis of the Tax Court's 1944 decision denying the deductions for the earlier years may be summarized as follows: By virtue of certain agreements of January 6, 1920 and March 20, 1920 entered into between the taxpayer, a manufacturer of flexible couplings, and Mrs. Thomas whereby she had assigned to the taxpayer certain patents on coupling devices which she then owned, as well as all improvements upon the inventions therein described, the taxpayer was already the owner of the two improvements on coupling devices when Mrs. Thomas on October 26, 1939 assigned her patent applications on those improvements to it. Accordingly the royalties in question which the taxpayer paid to Mrs. Thomas during 1939, 1940 and 1941, as the consideration for the assignment of the patent applications pursuant to an agreement between them of November 26, 1939 were merely voluntary payments and, therefore, not deductible for federal tax purposes as ordinary and necessary business expenses. 3 T.C.M. 620.

On November 26, 1943, a few months after the hearing by the Tax Court of the merits of the prior proceeding Mrs. Thomas and the taxpayer entered into a contract which was entitled a "Supplemental Agreement", effective retroactively as of July 1, 1943. By this agreement the taxpayer reassigned to Mrs. Thomas its rights in the improvement Patents Nos. 2,182,711 and 2,251,722 which had been assigned to it by her on October 26, 1939. In turn, Mrs. Thomas granted an exclusive license to the taxpayer to manufacture and sell flexible couplings under these patents. The parties furthermore agreed that the royalties provided for in the agreement of November 26, 1939 had proved to be greater in amount than they had contemplated and they provided for a lower basis of royalty payments, the minimum royalty provisions of the November 26, 1939 agreement to continue in effect and the maximum royalties not to exceed $80,000 per year.

In April, 1945 Mrs. Thomas filed a petition for a declaratory judgment in the Court of Common Pleas of Warren County, Pennsylvania, to determine the rights and obligations of the parties under the agreements of November 26, 1939 and November 26, 1943. In the petition Mrs. Thomas alleged that on March 21, 1945 the taxpayer advised her that because of the Tax Court's decision it would refuse to pay further royalties under the agreements of November 26, 1939 and November 26, 1943 and demanded return of all royalties paid since

May 1, 1939 and a reassignment to the taxpayer of the patents it had assigned pursuant to the agreement of November 26, 1943. The Court of Common Pleas sustained the claims of Mrs. Thomas, holding that the agreements of 1939 and 1943 were supported by valid, adequate and legal consideration, that Mrs. Thomas was the owner of the improvement patents in question and that she was entitled to judgment against the taxpayer for the amounts due her under the agreements. On appeal to the Pennsylvania Supreme Court, the judgment was affirmed, one justice dissenting on the ground that there was no real controversy between the parties. Thomas v. Thomas Flexible Coupling Co., 1946, 353 Pa. 591, 46 A.2d 212.

On the subsequent review of the Tax Court's 1944 decision by this court, this judgment of the Pennsylvania state courts was brought to our attention at argument. This court, nonetheless affirmed the Tax Court's decision. 158 F.2d 828, certiorari denied 329 U.S. 810, 67 S.Ct. 624, 91 L.Ed. 691.

We come then to the facts of the case before us: Pursuant to the terms of the agreement of November 26, 1939 the taxpayer paid Mrs. Thomas $170,833.16 in royalties for 1942 and $236,323.73 for the first half of 1943. Under that agreement, as modified by the agreement of November 26, 1943 royalty payments of $40,000 were paid for the second half of 1943 and $80,000 for the year 1944. The Commissioner disallowed the deduction of these payments from the taxpayer's gross income as ordinary and necessary business expenses under Section 23(a)(1)(A) of the Internal Revenue Code on the ground that the prior decision denying such deductions to the taxpayer for the tax years 1939, 1940 and 1941 estopped it from making the claimed deductions for the tax years here involved. On appeal the Tax Court reached the contrary conclusion, holding that its former decision was not res judicata as to the present proceeding. The court held that the royalty payments made during the tax years 1942, 1943 and 1944 pursuant to the agreements of 1939 and 1943 were deductible as ordinary and necessary business expenses, lim-

ited, however, to the gross amount of $80,000 a year. Five members of the court dissented on the ground that the doctrine of res judicata should have been applied. 14 T.C. 802.

On this petition the Commissioner contends that it was error on the part of the Tax Court to hold that the taxpayer was not estopped from deducting the payments to Mrs. Thomas as ordinary and necessary business expenses. He points out that the court, contrary to its findings in these proceedings, had found in the prior proceedings that the assignment of October 26, 1939 by Mrs. Thomas of the two improvement patents, Nos. 2,182,711 and 2,251,722, was in fulfillment of an obligation on her part to do so under the terms of the 1920 agreements, and, therefore, did not afford a basis for her receipt under the November 26, 1939 agreement of new compensation for the transfer in the form of the royalty which that agreement provided for. He contends that it was error for the Tax Court to hold that under the 1939 agreement Mrs. Thomas was entitled to royalties for the tax years involved contrary to the decision of the Tax Court, affirmed by this court, in the prior proceedings. Although the Commissioner concedes that the 1943 agreement was not involved in the prior proceedings, he contends that no different conclusion is required with regard to that contract because it was before the Pennsylvania state courts and this court during the prior proceedings and was, therefore, ruled upon in those proceedings.

On the other hand the taxpayer strongly urges that the Tax Court in the present proceeding rightly held that the decision of the Pennsylvania Supreme Court has authoritatively determined that Mrs. Thomas was not legally obligated in 1939 to assign the patents in question to the petitioner, that the assignment which she made in that year was, therefore, a legal consideration for the taxpayer's promise to pay the royalties provided under the contract of November 26, 1939 and that the taxpayer was accordingly legally obligated to make the royalty payments which it did make during the years 1942, 1943 and 1944.

The royalty payments which are involved in this case fall, as we have seen, into two groups—those paid under the contract of November 26, 1939 for the year 1942 and the first half of the year 1943, the first 18 months of the period of three years in question, and those paid under that contract as modified by the contract of November 26, 1943 for the second half of the year 1943 and all of 1944, the last 18 months of the period. The impact of the doctrine of res judicata is not the same with respect to the payments for these two periods and we shall accordingly consider them separately, considering first the payments for the last 18 months which were made under the 1943 agreement.

■ Since tax claims for successive years do not involve the same cause of action the aspect of res judicata which is applicable is that known as collateral estoppel. In such cases the judgment in a suit with respect to tax liability for one year is conclusive between the parties to the suit with respect to similar tax liability for a later year only as to those matters in issue and points controverted which were actually litigated and decided in the prior suit. Tait v. Western Md. Ry. Co., 1933, 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405. In Commissioner v. Sunnen, 1948, 333 U.S. 591, 599–600, 68 S.Ct. 715, 720, 92 L.Ed. 898, the Supreme Court stated the rule as follows:

"And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. Tait v. Western Md. Ry. Co., supra. If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation."

Applying this rule the Supreme Court in the Sunnen case said, 333 U.S. at page 602, 68 S.Ct. at page 721:

"For income tax purposes, what is decided as to one contract is not conclusive as to any other contract which is not then in issue, however similar or identical it may be."

The court accordingly held in that case that the tax status of royalty payments growing out of certain license contracts was not settled, under the doctrine of collateral estoppel, by a prior decision of the Board of Tax Appeals involving similar royalty payments made under similar but earlier royalty contracts.

■ We think that the doctrine of the Sunnen case clearly supports the conclusion of the Tax Court here so far as it relates to the royalty payments for the last 18 months period. For these payments were made under the contract of November 26, 1943 which was not and could not have been involved in the litigation covering the years 1939, 1940 and 1941, which culminated in the 1944 decision. Since the 1943 agreement made very substantial changes in the rights and obligations of the parties it necessarily involved a change in the controlling facts which prevents the application of the doctrine of res judicata.

■ It remains for us to consider on this branch of the case whether the Tax Court nonetheless erred in holding on the merits that the royalty payments in question constituted ordinary and necessary business expenses which were deductible for income tax purposes. Two separate questions were here presented to the Tax Court for decision. The first was whether the taxpayer was under a legal obligation to Mrs. Thomas to make the royalty payments in question, since if not they could hardly be regarded as "ordinary and necessary." This was purely a matter of state law involving the validity and obligatory character of a contract made and to be performed in Pennsylvania between residents of that state. In the solution of a local law question of this sort Pennsylvania law is controlling. Blair v. Commissioner, 1937, 300 U.S. 5, 9, 10, 57 S.Ct. 330, 81 L.Ed. 465; Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035; Dayton &

Michigan R. Co. v. Commissioner of Int. Rev., 4 Cir., 1940, 112 F.2d 627, 630.

The second question was whether the royalty payments, assuming that there was a legal obligation to make them under the state law, were deductible, as ordinary and necessary business expenses, for income tax purposes under the Internal Revenue Code. This question was solely one of federal income tax law. Blair v. Commissioner, 1937, 300 U.S. 5, 11, 57 S.Ct. 330, 81 L.Ed. 465. In its solution state law has no application.

Considering first the question whether the taxpayer was legally obligated to make these royalty payments we are met at the outset, as was the Tax Court, by the fact that the Supreme Court of Pennsylvania has held in a declaratory judgment suit between Mrs. Thomas and the taxpayer that the agreement of 1939 as modified by the agreement of 1943 imposed a binding legal obligation upon the taxpayer to make the royalty payments for which those agreements provided. Following the 1944 decision of the Tax Court the taxpayer had discontinued making royalty payments and in the Pennsylvania litigation a judgment was entered in favor of Mrs Thomas for the accumulated and unpaid royalties due her under the agreements. This judgment having been affirmed by the Supreme Court of Pennsylvania on an appeal taken by the taxpayer, it settled the proposition that under the law of Pennsylvania the agreements imposed a binding obligation to make the royalty payments to Mrs. Thomas. The Commissioner urges that the litigation was nonadversary in nature and that there was in fact no real controversy between the parties. Accordingly, he argues, the decision, under the doctrine of Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, was not binding on the Tax Court. The dissenting justice in the Supreme Court of Pennsylvania thought that the suit was nonadversary but the majority ruled otherwise and since the question involved is wholly one of state law and has been reviewed on appeal by the highest court of the state we are bound to accept its conclusion. See Kelly's Trust No. 2 v. Commissioner, 2 Cir., 1948, 168 F.2d 198. We conclude, therefore, that the Tax Court rightly held as to the last 18 months period that the royalty payments were made pursuant to a binding, legal obligation of the taxpayer.

The question remains as to whether the court erred in holding as a matter of federal income tax law that these payments were deductible by the taxpayer as ordinary and necessary business expenses. This was largely a question of fact in the determination of which the Tax Court is particularly competent. It found these royalty payments to be ordinary and necessary business expenses to the extent of $80,000 per year based upon the court's conclusion that these payments were ordinary and necessary because they were required to be made under binding agreements. This finding of fact is clearly supported by the record and we cannot hold it to be erroneous. The conclusion necessarily follows as a matter of federal tax law that the payments made during the 18 months period comprising the last half of 1942 and the year 1943 were deductible for income tax purposes from the taxpayer's gross income.

We turn then to consider the Tax Court's decision insofar as it held that the royalty payments for the first 18 months period here in question were also ordinary and necessary business expenses to the extent of $80,000 per year and deductible as such. These payments were made solely under the 1939 agreement which was before the Tax Court when it made its 1944 decision. Accordingly, unless some legally significant event had intervened to prevent the application of the doctrine of collateral estoppel, the taxpayer was bound under that doctrine as to the first 18 months period by the 1944 decision of the Tax Court which held the royalty payments made under the agreement of 1939 for the years 1939, 1940 and 1941 not to be deductible because they were made without legal consideration. The taxpayer contends that such an event did intervene, namely, the decision of the Pennsylvania courts to which we have already referred which held both 1939 and

1943 agreements to be valid and enforceable. It relies upon Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, which held that an intervening state court decision upon a question of local law involved in the determination of the taxpayer's income tax liability created a new situation which could not justly be ignored and which, therefore, prevented the operation of the doctrine of res judicata, and upon Commissioner v. Sunnen, 1948, 333 U.S. 591, at page 600, 68 S.Ct. at page 720, in which case the court said:

"As demonstrated by Blair v. Commissioner, 300 U.S. 5, 9, 57 S.Ct. 330, 331, 81 L.Ed. 465, a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable."

It is true that the Pennsylvania judgment was rendered and affirmed after the 1944 decision of the Tax Court. It was undoubtedly an intervening decision of a state court deciding a matter of local law which was involved in the taxpayer's case in the Tax Court. It was rendered and affirmed, however, before the review of the Tax Court's decision was argued in this court and it was referred to by counsel in their briefs and oral argument in this court and by us in our opinion. The Commissioner strongly urges that the rule of the Blair case is inapplicable under the circumstances since in that case the state court's decision came down after the Board of Tax Appeals decision had been reviewed by the Circuit Court of Appeals, whereas here the intervening state court decision was considered by our court upon our review of the first Tax Court decision and must, therefore, be regarded as having been applied in that case to the extent required by law. The taxpayer on the contrary urges that the Pennsylvania Supreme Court decision was not and could not have been fully considered in the first case because it was not in the record before the Tax Court and cites Masterson v. Commissioner of Internal Revenue, 5 Cir., 1944, 141 F.2d 391, as authority for that proposition. The Commissioner criticizes the Masterson case and asserts that it was wrongly decided.

We might agree with the Commissioner's criticism of the Masterson case if it were sought to be applied to the normal appellate situation. For ordinarily if upon appeal from the judgment of a district court the court of appeals learns of a subsequent state court decision which modifies a rule of law applicable to the decision of the case, the appellate court is bound to apply the changed rule of law to the decision on appeal even though the state decision was not and could not have been before the district court. Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327. In the present case, however, as in the Masterson case, this court did not have the normal scope of review at the time we reviewed the 1944 decision of the Tax Court. For at that time the extent of our review was severely limited by the rule laid down in Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. In the case of Commissioner v Heininger, 1943, 320 U.S. 467, 475, 64 S.Ct. 249, 254, 88 L.Ed. 171, decided on the same day as the Dobson case, the Supreme Court said:

"Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances. Except where a question of law is unmistakably involved a decision of the Board of Tax Appeals on these issues, having taken into account the presumption supporting the Commissioner's ruling, should not be reversed by the federal appellate courts."

And in Trust of Bingham v. Comm'r, 1945, 325 U.S. 365, 370, 65 S.Ct. 1232, 1235, 89 L.Ed. 1670, the Court said:

"Ordinarily questions of reasonableness and proximity are for the trier of fact, here the Tax Court. Commissioner v. Heininger, supra, 320 U.S. at page 475, 64 S.Ct. [249] 254, 88 L.Ed. 171; McDonald v. Commissioner, 323 U.S. 57, 64, 65, 65 S.Ct. 96, 99 [89 L.Ed. 68]; see Commissioner v. Scottish American Investment Co., 323

U.S. 119, 65 S.Ct. 169 [89 L.Ed. 113]. And even when they are hybrid questions of 'mixed law and fact,' their resolution, because of the fact element involved, will usually afford little concrete guidance for future cases, and reviewing courts will set aside the decisions of the Tax Court only when they announce a rule of general applicability, that the facts found fall short of meeting statutory requirements. Dobson v. Commissioner, supra, 320 U.S. [489] at page 502, 64 S.Ct. [239] 247, 88 L.Ed. 248; Commissioner v. Estate of Bedford, ante, 325 U.S. at page 283, 65 S.Ct. 1157 [89 L.Ed. 1611]; cf. Paul, 'Dobson v. Commissioner,' 57 Harv. Law Rev. 753, at 828–832, 836, 837. But whether the applicable statutes and regulations are such as to preclude the decision which the Tax Court has rendered, is, as was recognized in Dobson v. Commissioner, supra, 320 U.S. 492, 493, 64 S.Ct. [239] 242, 88 L.Ed. 248, a question of law reviewable on appeal. See also Commissioner v. Heininger, supra, 320 U.S. 475, 64 S.Ct. [249] 254, 88 L.Ed. 171."

We think that it may fairly be said that under the Dobson rule of review questions of the deductibility of payments as ordinary and necessary business expenses were either regarded as pure questions of fact or as mixed questions of law and fact the decision of which by the Tax Court was reviewable only for plain errors in the application of the federal tax law, that is, in laying down "a rule of general applicability." Alleged errors of the Tax Court in appraising the effect of state law with respect to the character of such payments were beyond the reach of the courts of appeals. Indeed we said as much in our opinion affirming the 1944 decision of the Tax Court. For although we discussed the Pennsylvania Supreme Court decision we concluded our opinion by saying, 158 F.2d at page 832:

"And the decision of the Tax Court under all the circumstances and predicated on the mixed questions of law and fact involved is final. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239,

88 L.Ed. 248; John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299 [90 L.Ed. 278]."

It is thus quite clear that our review of the Tax Court's 1944 decision was necessarily made on the record before the Tax Court and that we were without power to give effect to the Pennsylvania judgment in reaching our decision. Indeed it would seem that we could not even have remanded the case to the Tax Court to reconsider its decision in the light of the state court case. Sewell v. Commissioner of Internal Revenue, 5 Cir., 1945, 151 F.2d 765, certiorari denied 327 U.S. 783, 66 S.Ct. 683, 90 L.Ed. 1010. Under the circumstances it appears that the taxpayer did not in the prior proceeding have its day in court upon the applicability of the Pennsylvania state court judgment to the question of the deductibility, for federal tax purposes, of its royalty payments to Mrs. Thomas. Accordingly we think that it would be unjust and improper to apply the doctrine of collateral estoppel here. For there has truly been an intervening state decision upon a relevant question of local law which has created a new situation within the meaning of the Blair case.

This leaves for our consideration only the question whether as to the royalty payments for the first 18 months period the Tax Court erred in reaching its conclusion in this case that they were made pursuant to a legal obligation of the taxpayer and were ordinary and necessary business expenses and deductible as such. In this connection the Tax Court disallowed as deductions so much of these royalty payments as were in excess of $80,000 per year. The courts of Pennsylvania in the declaratory judgment proceeding between Mrs. Thomas and the taxpayer upheld the 1939 agreement as a valid enforceable contract. We are of opinion that the Tax Court did not err in holding that that judgment settled the question of local law as to whether the taxpayer was legally obligated to make the royalty payments for the period now under discussion. For the reasons already stated with respect to the later period we cannot say that the court erred in concluding that these royalty payments were ordinary and

necessary business expenses within the meaning of Section 23(a)(1)(A) of the Internal Revenue Code and as such deductible for income tax purposes.

The decisions of the Tax Court will be affirmed.

HASTIE, J., concurs in the result.