**CHANNING et al. v. HASSETT.**

No. 4656.

United States Court of Appeals First Circuit.

Dec. 31, 1952.

Owen Tudor, Boston, Mass., for appellants.

George F. Lynch, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Robert N. Anderson, Sp. Asst. to Atty. Gen., George F. Garrity, U. S. Atty., and Philip T. Jones, Asst. U. S. Atty., both of Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Katharine M. Channing and Sedgwick Minot are income beneficiaries of a trust established under the will of their father, William Minot, of Boston, Massachusetts, who died in 1900. They filed complaints in the court below for the recovery of income taxes alleged to have been erroneously paid and collected, for the taxable year 1941 in the case of Katharine, and for the taxable years 1939 and 1941 in the case of her brother. The cases were tried together in the district court, which rendered judgment in each case for the defendant. The separate appeals of Katharine and Sedgwick were, by order of this court, docketed as a single cause upon a consolidated record. Since the appeals present the same single question of law we shall make no further special reference to the facts in Sedgwick's case.

For the year 1941, following a course of treatment running back to 1929, the trustees deducted on their original fiduciary return the whole amount of the income of the trust available for distribution to Mrs. Channing, and she reported and paid a tax thereon, though only part of such amount was actually distributed to her during the 1941 calendar year, the balance in fact not having been distributed to her until on or about February 18, 1942, at the close of the trustees' probate accounting period. In her present claim for refund plaintiff asserts that the foregoing tax treatment was erroneous under the then applicable provisions of §§ 162(b) and 162(c) of the Internal Revenue Code, 53 Stat. 66, 26 U.S.C.A. § 162(b, c), which are copied in the footnote;[1] that the balance of 1941 income not paid or credited to her during that year was properly taxable, not to her, but to the trust,

---

1. "The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount

under § 162(c), as income which in the discretion of the fiduciary might be either distributed to the beneficiary or accumulated. The trustees have filed an amended fiduciary return for 1941, making the corresponding changes; so that the government will get from the trust its tax on the income in question, in case it is determined that such income was improperly taxed to the beneficiary. However, the government maintains that the income was correctly reported on the original fiduciary and individual returns; that all of the 1941 trust income available for distribution to Mrs. Channing was income which, under the terms of the trust, was "to be distributed currently" by the fiduciary to the beneficiary within the meaning of § 162(b), and therefore was all taxable to the beneficiary though some of it was not actually paid to her until the following year.

We may assume that the Treasury will collect less tax revenue if the tax here is payable by the trust rather than by the beneficiary. Also, if we accept appellants' argument as to the proper construction of the trust instrument, the trustees were able to accomplish this minimizing of taxes (though apparently at the time they did not realize the tax consequences of what they were doing) by the expedient of withholding distribution of the income to the beneficiary until after the expiration of the taxable year. But that is precisely what § 162(c) permitted in 1941, in the case of trust income for the taxable year which in the discretion of the fiduciary might either be distributed to the beneficiary or accumulated; the beneficiary had to report and pay his individual tax only on so much of such income as the fiduciary actually paid or credited to him during the taxable year. By § 111 of the Revenue Act of 1942, 56 Stat. 809-810, the Congress closed up certain of what it regarded as loopholes in these provisions of § 162 of the Code, but these amendments were operative only prospectively. We note, further, that the testator, who died in 1900, could not have had any motive of minimizing federal income taxes by providing as he did in his will; not that this motive, if it existed, would rightly be significant, but it sometimes is permitted to give a spurious flavor to a case that does the taxpayer no good.

Therefore we approach the construction of the will without any predisposition to reject the contention that this was a discretionary trust within the purview of § 162-(c). No doubt the will must be construed in accordance with Massachusetts law. But at the time the district court decided the case the Probate Court for Suffolk County, Mass., had not had occasion to construe this particular will; nor do there appear to be any Massachusetts cases construing trusts with provisions sufficiently comparable to the present one to be helpful. Hence the district court had to do the best it could, without the aid of any Massachusetts precedents, in construing several somewhat contradictory paragraphs in the will of William Minot.

By the fourth paragraph of his will, Mr. Minot gave the residue of his property to trustees "in trust to set apart the same into so many shares as there shall be children of mine living at my decease * * * and to hold, manage and keep the shares so set apart for then living children of mine invested one equal share for each child of mine then living, *for and during the natural*

---

of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

"(c) * * * in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary."

*life of such child, paying the net income to him or her * * *"* (Italics added); with provision for various remainder interests upon the decease of each child respectively. Wholly consistent with the foregoing, the seventh paragraph of the will stated: "All income payable hereunder shall be paid to the beneficiary quarterly or oftener if convenient," followed by spendthrift trust provisions.

If the will had stopped there, it would have been clear that Mrs. Channing would have had a right to quarterly payments of all the net income derived from her share of her father's estate; that the whole of such net income for 1941, whether or not it was actually distributed to her in that year, would have been income "which is to be distributed currently" within the meaning of § 162(b), and so would have been taxable to the beneficiary.

But the testator went on to provide, in the thirteenth paragraph, as follows:

"I authorize whomsoever shall lawfully act as Trustees under my Will to renew or replace from time to time any mortgage or mortgages or debts which may be existing at the time of my death, or which may be created by my Executors; and I further authorize them at discretion from time to time to set aside and add to the principal of the trust fund held for any child of mine such portion of the net income of the trust property as in their judgment is not required for the comfortable support and maintenance of such child, or to apply or invest the same to be applied to the reduction and payment of any indebtedness of my estate."

It cannot be denied that this paragraph does modify the provisions of paragraphs four and seven, at least to this extent: That the beneficiary is entitled to receive as of right, not payment of all the net income, as would have been inferred from paragraphs four and seven standing alone, but rather, payment of such portion of the net income as in the judgment of the trustees is required for her comfortable support and maintenance.[2]

The question remains, as of what time are the trustees empowered to make this judgment as to what is needed for the comfortable support and maintenance of the beneficiaries, and to exercise this discretion to add any surplus income to principal? In this connection, the district court has in effect construed the thirteenth paragraph of the will to be subject to the seventh, that is to say, it held that the trustees must exercise their given discretion at least quarterly, otherwise the power to accumulate would lapse with respect to the current income for the quarterly period. The court thus held that the beneficiaries became taxable on all trust income which had not by affirmative decision of the trustees been added to principal by the end of the respective quarterly periods (whether or not this income was actually distributed to the beneficiaries in the tax year in question), on the ground that once the discretion to add income to principal had not been timely exercised, any such amounts of income were to be deemed currently distributable within § 162(b), and hence actually or constructively received by the beneficiaries during the calendar year.

▇ Reading the will as a whole, we think that the discretionary paragraph thirteen is the most important, since it goes to the whole testamentary scheme, whereas the seventh paragraph, prescribing periodic payments to the beneficiary, only covers an administrative detail which might perhaps be filled in by state law anyway. Bearing in mind the underlying purpose of paragraph thirteen, it is evident that the intelligent exercise by the trustees of the discretionary power to accumulate income would be hampered if they had to exercise it irrevocably,[3] or not at all, at the end of each quarterly period or

---

2. It was stipulated that each of the two life beneficiaries had substantial other income and assets. We suppose that the trustees could take this into account in determining what portion of the trust income was needed for the comfortable support and maintenance of the said beneficiaries.

3. It should be noted that the trustees have no power to make payments out of corpus.

possibly even monthly, without any ability to keep the long-range situation in mind. A natural reading of the thirteenth paragraph does not suggest any such narrow limitation upon the power to accumulate. We attribute to paragraphs four, seven and thirteen, read in conjunction, the following command to the trustees, in effect: Any current income which in the judgment of the trustees is needed for the comfortable support and maintenance of the beneficiaries shall be paid to them quarterly or oftener if convenient; provided, however, that the trustees may at their discretion "from time to time" (not quarterly) "set aside" (that is, hold in a suspense account for future allocation) and eventually, if they see fit, "add to the principal of the trust fund" any surplus of current net income not needed for the purposes aforesaid, or else, in the discretion of the trustees, eventually pay over the whole or any part of such "set aside" surplus income to the respective beneficiaries.

In accordance with our construction of the will has been the practical and hitherto unchallenged construction of their powers by the trustees themselves over the long stretch of years. The trust has used the cash system of accounting, and has filed its fiduciary income tax returns on a calendar year basis, as have also the two plaintiffs. The fiduciary probate accounts, on the other hand, have been filed on the basis of a fiscal year ending on February 18, though occasionally a fiduciary accounting would cover a period of more than one year. Normally the trustees have distributed part of the income at monthly intervals as needed by the beneficiaries (and so they did in 1939 and 1941, the tax years now in question) and have "set aside" or carried the surplus in a suspense account. On or about February 18 the trustees have then determined whether such surplus income should be paid out to the beneficiaries or accumulated under the discretionary clause in the will; occasionally, however, they have carried over income balances in the suspense account from one year to the next. Up to 1928, the trustees frequently exercised their discretionary power to add surplus income to principal; but from 1929 to 1941 all the available net income was paid to the respective beneficiaries sooner or later. Since 1941, on several occasions, income held in the suspense account has been added to capital.

In view of the fact that the decision of the court below indicated that the trustees had not been observing the terms of the trust instrument, the trustees filed in the Probate Court for Suffolk County, Mass., a petition for instructions, calling attention to the tax litigation in the federal district court and to the opinion and judgment of the district court therein, and asking the Probate Court for a construction of the will in the respects above mentioned. All persons with interests in the trust estate were notified and a guardian ad litem was appointed to represent the interests of minors and persons unborn or unascertained. All the parties were apparently content to submit the question to the Probate Court, without briefs or oral argument. The subsequent decree of the Probate Court gave instructions to the trustees contrary to the construction of the will made by the federal district court; it held that the discretionary power to accumulate surplus income need not be exercised quarterly by the trustees, but that the trustees might defer their decision until the end of their annual probate accounting period, or until later if in their judgment the circumstances so required. Further, the decree stated that the trustees might properly carry a reasonable balance of income along from year to year without deciding its ultimate disposition and might ultimately add either part or all thereof to capital or distribute part or all thereof to the beneficiary as subsequent events might indicate to be desirable in the reasonable discretion of the trustees.

Appellants insist that this decree of the Probate Court, in an unappealed proceeding initiated after the date of the judgments of the court below now under review, is conclusive upon us as to the construction of the powers of the trustees under the will. This may be so; but the effect to be given to the decree of the Probate Court, in the circumstances above related, is not free from difficulty. See Freuler v. Helver-

ing, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Commissioner v. Thomas Flexible Coupling Co., 3 Cir., 1952, 198 F.2d 350; Falk v. Commissioner, 3 Cir., 1951, 189 F.2d 806; Kelly's Trust v. Commissioner, 2 Cir., 1948, 168 F.2d 198; Eisenmenger v. Commissioner, 8 Cir., 1944, 145 F.2d 103, 156 A.L.R. 741; Brainard v. Commissioner, 7 Cir., 1937, 91 F.2d 880, 883-84. See also Cahn, Local Law and Federal Taxation, 52 Yale L.J. 799, 819 (1943). We choose not to rest our decision upon this ground.

But if it be assumed that the decree of the Probate Court is not conclusive in this tax litigation, yet we think it need not be disregarded altogether, but may be given some weight by us in our consideration of these appeals. After all, such decree is binding upon the trustees and upon all the beneficiaries of the trust in respect to the powers of the trustees to accumulate income or to make payments of income to the life beneficiaries. At least we can say that the decree of the Probate Court gives us some assurance that our own construction of the will, as above set forth, is not wide of the mark.

The judgments of the District Court are vacated and the cases are remanded to that Court for the entry of judgments in favor of the respective plaintiffs, in appropriate amounts, in conformity with this opinion; the appellants recover costs on appeal.