THOMAS FLEXIBLE COUPLING CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9005.

Circuit Court of Appeals, Third Circuit.

Argued April 15, 1946.

Decided Aug. 20, 1946.

Writ of Certiorari Denied Jan. 20, 1947.

See 67 S.Ct. 624.

Austin F. Canfield, of Washington, D. C. (William T. Hannan, of Washington, D. C., on the brief), for petitioner.

J. Louis Monarch, Sp. Asst. Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and Carlton Fox, Sp. Asst. Atty. Gen., on the brief), for respondent.

Before McLAUGHLIN and O'CON-NELL, Circuit Judges, and GOURLEY, District Judge.

## McLAUGHLIN, Circuit Judge.

Petitioner is a Pennsylvania corporation engaged in the manufacture and sale of flexible couplings. It was organized in 1917. Its president is Millard T. Thomas, who has been in the coupling business since 1914. By January 6, 1920 Bertha E. Thomas, wife of Millard, had secured three patents on flexible couplings. Other than her being named as inventor there is no evidence of any technical knowledge by Mrs. Thomas of flexible couplings. On January 6, 1920 Mr. Thomas owned 325 shares and Mrs. Thomas 25 shares of the 492 shares represented at the stockholders meeting of the corporation held that day. As the result of proceedings at that meeting, on March 20, 1920, an agreement was entered into by the company and Mrs. Thomas. Under it she assigned to the company two of her flexible coupling patents No. 1,323,423 dated December 2, 1919 and No. 1,326,993 dated January 6, 1920 "together with all improvements upon the invention" and "all United States Letters Patents she now owns on flexible couplings and which may be hereafter granted to her and all United States Letters Patents on future improvements on flexible couplings which may be obtained or acquired by her." Mrs. Thomas retained all rights on said patents and improvements in connection with automotive vehicles. Mrs. Thomas on her part received 450 shares of the company stock and royalties of 10% of the gross sales price.

On September 2, 1937 she applied for an improvement patent on flexible couplings which was issued to her December 5, 1939 and numbered 2,182,711. On August 8, 1939 she applied for a patent relating to an emergency support for flexible couplings. This was granted August 8, 1941 and is No. 2,251,722. These two inventions were assigned in writing by Mrs. Thomas to the company on October 26, 1939, which assignment was recorded in the Patent Office October 27, 1939. On November 26, 1939 the company and Mrs. Thomas entered into a written contract whereby Mrs. Thomas assigned the last two named patents to the company for $3500. and certain specified royalties. Patents in pursuance of this agreement were thereafter issued the company. Any license to make or sell under the letters patent on flexible couplings to be used in connection with automobiles, trucks and tractors was without value on October 26, 1939 and November 26, 1939. Payments were made to Mrs. Thomas in 1939, 1940 and 1941 under the November 26, 1939 agreement.

The Tax Court held that those payments were not ordinary and necessary business expenses and therefore not deductible from petitioner's gross income. This finding was arrived at because at the time of the November 26, 1939 contract, Mrs. Thomas had already agreed by the March 20, 1920 document to assign to the company all United States letters patent granted her on future improvements on flexible couplings and she

had also already assigned in writing to the company on October 26, 1939 the two patents covered by the royalty agreement of November 26, 1939. The two patents were improvements on flexible couplings and the March 20, 1920 contract was determined to have been supported by adequate consideration. The trial consumed three days in New York City and one day in Washington. Petitioner was represented by experienced counsel. The Court concluded that the petitioner was under no legal obligation to pay the royalties and that there was no showing of any exceptional business necessity for making such payments.

Petitioner applied to the Tax Court for rehearing. The main grounds were: (1) Newly discovered evidence that a later oral agreement between Millard acting for the company, and Mrs. Thomas, superseded the written contract of March 20, 1920 which was rescinded. By the terms of the alleged oral contract Mrs. Thomas was no longer obligated to assign to the company any patents which might thereafter be granted to her or any patents on future improvements on flexible couplings. From this the conclusion was drawn that the assignments of the patents in 1939 being therefor assignments to which the company was not already legally entitled, they constituted consideration for the agreement of the company to pay Mrs. Thomas the disputed royalties. (2) That the assignments of the patents on October 26, 1939 were made in accordance with a contract between the company and Mrs. Thomas in January 1939 with the contract of November 26, 1939 merely a formal confirmation thereof. In that situation it could not be said that petitioner was already the owner of the patents (under the assignment of October 26, 1939) when it contracted to pay the questioned royalties; and (3) evidence that the license in connection with automobiles, trucks and tractors was not valueless as found by the Court.

The Tax Court passing on the proffer of evidence found the first contention wholly without merit. It observed that Millard Thomas, alleged to have acted for the company in the January 1939 oral agreement with Mrs. Thomas, testified extensively in the hearing with no reference to such a contract, and with his testimony inferentially inconsistent with the existence of such contract. On the third point the Court cited the evidence which caused it to decide that the automotive license was valueless in 1939. In addition thereto it held that by the contracts and assignments of 1939 Mrs. Thomas did not relinquish her license under the March 1920 contract. In view of this the Court held the second point, namely, proof of an alleged contract in January 1939, was immaterial.

Following the denial of rehearing in the Tax Court, there was a declaratory judgment proceeding as to the November 26, 1939 agreement brought in the Warren County, Pennsylvania, Common Pleas Court by Mrs. Thomas against the company. In that matter the company defendant admitted the oral agreement to cancel the contracts with the exception of the continuance of the obligation to pay Mrs. Thomas ten per cent royalties. It also admitted the informal contract of January 1939. The case was heard on complaint and answer. The Common Pleas Court sustained plaintiff's claims. The Pennsylvania Supreme Court affirmed. Thomas v. Thomas Flexible Coupling Co., 353 Pa. 591, 46 A.2d 212, 217. Justice Jones in a strong dissenting opinion, noting that the defendant by its answer sought to make a showing of facts more favorable to the plaintiff's claim than she herself had averred in her petition, said, "There is certainly no controversy between the plaintiff and the defendant with respect to the alleged contract and the rights of the parties thereunder." He further pointed out that creditors were not interested in the litigation, the corporation being highly solvent and that stockholders had not only approved the alleged contract but also volunteered to give the management a vote of confidence. He then said, "Thus, there is manifestly no one with a penny's worth of material interest in the subject matter of this proceeding to contend with anyone else interested materially therein. Consequently, no 'actual controversy' exists."

■ The only problem in this case is whether the royalty payments to Mrs. Thomas constituted "ordinary and neces-

sary expenses" of the company. This is not a question of state law under Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. It is entirely an issue of federal tax law. For what it was worth, petitioner's whole case to date has been passed upon by the Tax Court. On the evidence before it in the original hearing it decided against the petitioner. On the rehearing motion it considered the entire offer of the petitioner on the basis that the additional evidence would be as represented, and it concluded that its original finding should remain undisturbed.

█ The Tax Court obviously labored under no misapprehension of law in its decision. Under the facts before it and passing upon the credibility of the witnesses it found that there was no consideration for the royalty agreement, that the royalty payments by the company were actually voluntary and that they were not ordinary and necessary business expenses. The contract principles which the Tax Court applied are of course sound Pennsylvania and universal law, but the evidence and particularly the manner of its presentation was far different in the Tax Court than in the Common Pleas. It is unnecessary to repeat the radically changed smooth picture given the state tribunal. From the undisputed facts before it, the Common Pleas, and later the Supreme Court, held that there the royalty agreement was sufficient under the state law. But that finding in no way vitiates the Tax Court decision, solidly based on federal tax law, that the payments were not ordinary and necessary business expenses. That tax law doctrine is the foundation of the United States Supreme Court's opinion in Commissioner v. Tower, 66 S.Ct. 532, 536. The partnership issue in that case was urged as valid under Michigan law. There was no collateral state court finding as here, but the Supreme Court had such an element very much in mind, Mr. Justice Black saying in the opinion:

"Respondent contends that the partnership arrangement here in question would have been valid under Michigan law and argues that the Tax Court should conse-quently have held it valid for tax purposes also. But the Tax Court in making a final authoritative finding on the question whether this was a real partnership is not governed by how Michigan law might treat the same circumstances for purposes of state law. Thus, Michigan could and might decide that the stock-transfer here was sufficient under state law to pass title to the wife, so that in the event of her death it would pass to whatever members of her family would be entitled to receive it under Michigan's law of descent and distribution. But Michigan cannot by its decisions and laws governing questions over which it has final say, also decide issues of federal tax law and thus hamper the effective enforcement of a valid federal tax levied against earned income."

The Court further said:

"The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. A person may be taxed on profits earned from property, where he neither owns nor controls it. Lucas v. Earl, supra, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot be decided simply by looking at a single step in a complicated transaction. To decide who worked for, otherwise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. See Commissioner v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 708 [89 L.Ed. 981]. Of course, the question of legal ownership of the capital purportedly contributed by a wife will frequently throw light on the broader question of whether an alleged partnership is real or pretended. But here the Tax Court's findings were supported by a sufficient number of other factors in the transaction, so that we need not decide whether its holding as to the completeness of the gift was correct. Cf. Helvering v. Hallock, 309 U.S. 106, 117, 118, 60 S.Ct. 444, 450, 451, 84 L.Ed. 604, 125 A.L.R. 1368; Burnet v. Wells, 289 U.S. 670, 677, 53 S.Ct. 761, 763, 77 L.Ed. 1439."

"It is the command of the taxpayer over the income which is the concern of the tax laws. Harrison v. Schaffner, 312 U.S. 579, 581, 582, 61 S.Ct. 759, 85 L.Ed. 1055. And income earned by one person is taxable as his, if given to another for the donor's satisfaction. Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 148, 85 L.Ed. 75, 131 A.L.R. 655. It is for this reason, among others, that we said in Helvering v. Clifford, supra, 309 U.S. [331], 335, 60 S.Ct. [554], 556, 84 L.Ed. 788, that transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny. For if under circumstances such as those now before us, the end result of the creation of a husband-wife partnership, though valid under state laws, is that income produced by the husband's efforts continues to be used for the same business and family purposes as before the partnership, failure to tax it as the husband's income would frustrate the purpose of 26 U.S.C. § 22(a), 26 U.S.C.A. Int.Rev.Code, § 22(a). By the simple expedient of drawing up papers, single tax earnings cannot be divided into two tax units and surtaxes cannot be thus avoided."

Lusthaus v. Commissioner, 66 S.Ct. 539, 540, a companion case to Tower, concerned much the same circumstances as Tower but under Pennsylvania law. In the opinion the Supreme Court quoted the Tax Court's decision below with approval saying: "It concluded that while the partnership was 'clothed in the outer garment of legal respectability' its existence could not be recognized for income tax purposes."

Petitioner contends that in addition to Erie R. Co. v. Tompkins, supra, Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, controls the point before us. The Blair case while not mentioned in Mr. Justice Black's opinion in Tower was certainly considered by the Supreme Court at the time. It is referred to in Mr. Justice Reed's dissent in Lusthaus which was argued with the Tower appeal. It is worthy of attention that Blair v. Commissioner is not cited to uphold the Lusthaus partnership as being valid under Pennsylvania law but for the proposition that the gift to Mrs. Lusthaus "was a gift of property which thereafter produced income which was taxable to the donee, as in Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; * * *." In the Blair case the determination of the petitioner's liability rested entirely upon local law. The pertinent decision of the Illinois court was prior to the particular Board of Tax Appeals hearing; it was considered by the Board and was the sole reason for the Board finding as it did.

As we see it the pending issue is directly within the scope of the Tower and Lusthaus opinions. In Tower, the Supreme Court accepted the possibility of the Michigan law upholding the stock transfer and thus validating Mrs. Tower's title to the stock but the Court said in effect that such final state conclusion could not govern the question of the federal taxability of the stock to the husband. In Lusthaus the cloak of legal respectability under Pennsylvania law could not be recognized for income tax purposes. Here the Tax Court heard and for all practical purposes reheard the matter and decided the mixed questions of law and fact which arose. Later on, in a suit started after the Tax Court opinions had been filed, the state court upheld the royalty contract on facts agreed between the parties. That decision cannot hamper "the effective enforcement of a valid federal tax levied against earned income." And the decision of the Tax Court under all the circumstances and predicated on the mixed questions of law and fact involved is final. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; John Kelley v. Commissioner, 326 U.S. 521, 66 S.Ct. 299.

Petitioner's contention that the Tax Court erred in refusing to grant a rehearing is sufficiently covered in the above discussion. It is without merit as is the final point urged.

Affirmed.

O'CONNELL, Circuit Judge, participated in the consideration and decision of this case but was unable to collaborate in the preparation of the opinion.