BEST LOCK CORPORATION, ET AL,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54550, 54567, 54571, 60805, 62155, 64623. Filed November 29, 1957.

---

[1] Proceedings of the following petitioners are consolidated herewith: Best Lock Corporation, Docket No. 60805; The Best Foundation, Inc., Docket Nos. 54571 and 62155; Frank E. Best and Emilia A. Best, Docket Nos. 54567 and 64623.

*Willis K. Kunz, Esq.,* and *Claude M. Spilman, Jr., Esq.,* for the petitioners.

*Robert E. Johnson, Esq.,* for the respondent.

Tietjens, *Judge:* These consolidated cases involve deficiencies in income tax as follows:

| Docket Nos. | Petitioners | Years | Deficiencies |
|---|---|---|---|
| 54567, 64623 | Frank E. Best and Emilia A. Best | 1949<br>1950<br>1951<br>1952<br>1953 | $7,271.80<br>25,773.52<br>29,349.18<br>33,326.62<br>31,153.20 |
| 54550, 60805 | Best Lock Corporation | 1949<br>1950<br>1951<br>1952 | 13,707.14<br>27,496.74<br>75,691.77<br>52,688.23 |
| 54571, 62155 | The Best Foundation, Inc. | [1] 1950<br>1951<br>1952<br>1953<br>1954 | 4,854.18<br>11,333.35<br>13,085.99<br>17,178.69<br>13,422.10 |

[1] Taxable years are fiscal years ended June 30.

The issues in the case of the individual petitioners are whether certain payments made by Best Lock Corporation to the Best Foundation, Inc., were constructive income to Frank E. Best, and whether an amount paid in 1953 by Best to the Foundation is deductible as a charitable contribution.

In the case of Best Lock Corporation the issues are whether payments made to Best and the Foundation are deductible as ordinary and necessary business expenses and whether amounts paid in 1951 and 1952 for the preparation of a catalog published in 1953 represent capital expenditures.

In the case of the Foundation the principal issue is whether it is an organization exempt, pursuant to section 101 (6) of the Internal Revenue Code of 1939, from income tax. If it is not so exempt, it

will be necessary to determine the taxable income of the Foundation and whether it is entitled to certain deductions claimed. There is also an issue of whether the payments by Best Lock Corporation to the Foundation are income to the Foundation if it is held that they are constructive income to Best.

The individual petitioners waive the issues with respect to deductibility of amounts claimed on the return for 1952 for experimental and development expense and for interest in Docket No. 64623.

FINDINGS OF FACT.

The returns of the taxpayers were filed with the collector or district director of internal revenue at Indianapolis, Indiana.

Frank E. Best and Emilia A. Best are husband and wife residing at Indianapolis, Indiana.

Best Lock Corporation was incorporated in Delaware and has its principal office in Indianapolis.

Best Foundation, Inc., is a corporation organized in 1949 under the laws of Indiana. Its principal office is in Indianapolis.

Frank E. Best has made a number of inventions and has received approximately 100 patents, most of them in the locking art. The earliest of these involved herein is a patent issued July 5, 1921, a basic patent upon a lock core mechanism which can be removed from the lock and interchanged. From this and other patents Best has developed a locking system which is sold for use in industrial plants and buildings requiring master key systems and replaceable locks.

Best has organized several corporations in connection with the manufacturing and marketing of his locking system and other inventions. In 1920 Best Lock Company was organized under the laws of the State of Washington. In 1921 the name of this corporation was changed to Frank E. Best, Inc. The stock in this corporation was issued to Best in exchange for an assignment of his rights to the locking system. Some of the stock was returned to the corporation and sold to the public, but Best retained and still holds more than 50 per cent of the voting stock.

In 1923 Best Universal Lock Co., a Washington corporation, was organized. The controlling stock interest in this corporation is held by Frank E. Best, Inc., which issued a license to this subsidiary to manufacture locking devices and related hardware. Some stock was sold to the public. This corporation manufactured products under the license, and sales were made commencing in January 1925.

In 1928 Automatic Manufacturing Co. was organized under the laws of Delaware. The name of this corporation was later changed to Best Lock Corporation and it is one of the petitioners. The controlling stock is held by Best as trustee for Best Universal Lock Co.

and some shares are owned individually by Best and his relatives. In May 1928, Frank E. Best, Inc., licensed this petitioner to manufacture products and it replaced Best Universal Lock Co. (Washington) as the manufacturing corporation.

In 1938 Best Universal Lock Co., Inc., was incorporated under the laws of Indiana. Its stock is wholly owned by Best Lock Corporation and it acts as manufacturing and sales agent for its parent for a consideration of 5 per cent of the net profits.

The agreement between Frank E. Best, Inc., as first party, and Automatic Manufacturing Co., as second party, dated May 23, 1928, is captioned "LICENSE (#4)" and provides in part:

WHEREAS, it is desired to provide for a reorganization of the Best Universal Lock Co., and the re-vesting of the right and license granted unto said company by first party, in a new company adapted to carry forward the original objects and purposes of said Best Universal Lock Co., for the benefit of the stockholders and creditors thereof, upon the relinquishment, cessation and/or termination of said right and license thereto; and

WHEREAS Automatic Manufacturing Co., a Delaware Corporation, herein known as second party, is desirous of obtaining the sole and exclusive right, license and authority to manufacture, use and sell, all of said goods, wares and merchandise under the above mentioned system of patents, if and when the aforesaid license to Best Universal Lock Co., shall cease and terminate, as provided in said license.

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that first party, for and in consideration of the covenants, agreements and considerations set forth in the collateral AGREEMENT hereto attached as Exhibit "A" does hereby give and grant to Automatic Manufacturing Co., a Delaware Corporation, the second party hereto, in the event and from the time of the relinquishment, cessation or termination of the aforesaid license (Exhibit "B"), the sole and exclusive right and license to make, use and sell within the United States of America goods, wares and merchandise under the Best group of lock patents owned by first party, as fully and to the same extent that the said right and license were ever enjoyed by the Best Universal Lock Co.

This license is in all respects subject to the terms and conditions of the aforesaid license (Exhibit "B") to Best Universal Lock Co., and conveys to second party, in the event and from the time of the relinquishment, cessation and/or termination of the aforesaid license (Exhibit "B"), all the right and license theretofore enjoyed by said Best Universal Lock Co., except insofar as the terms of said license (Exhibit "B") may be modified by the provisions hereof.

This license #4 includes rights under all United States patents and patent applications now or hereafter owned or controlled by Frank E. Best, Inc., and amendments, additions to, or improvements upon said patents and patent applications; provided the above mentioned patents, patent applications, amendments, additions and improvements relate and pertain to the locking contrivances, service devices and manufacturing machinery incident to the manufacture, use, exploitation and sale of the Best Universal Locking System in the United States of America.

    \*      \*      \*      \*      \*      \*      \*

It is further understood and agreed that all patents for inventions relating to said Best Universal Locking System hereafter made in the course of the business of either party hereto shall be taken in the name of, or assigned to, FRANK

E. BEST, INC., and that license thereon in the United States of America shall upon the relinquishment, cessation and/or termination of the aforesaid license (Exhibit "B") to Best Universal Lock Co. automatically vest in Automatic Manufacturing Co., subject to all the provisions hereof.

This license identified certain patents and patents applied for as covered by the agreement, listing 31 issued patents, 5 patents allowed but not issued, 12 patents applied for, and 4 trademarks issued. The second party agreed to pay all debts of Best Universal Lock Co. with interest before declaring dividends.

In 1928 the name of Automatic Manufacturing Co. was changed to Best Lock Corporation. This corporation manufactured products pursuant to the above license until 1938. The manufacturing and selling of products since then has been carried on by its subsidiary.

In 1940 Best granted to Best Lock Corporation an exclusive license to make, use, and sell in the United States, goods under the Best group of dynamic rectifier patent applications. This was identified as License #5 and was for a term ending December 31, 1945. It referred to specified patent applications, including amendments, additions, or improvements, and all patents into which the applications might mature. It provided for royalties measured by work done with a minimum royalty of $10,000 for 1940 and $15,000 for each subsequent year payable to Best. No products were manufactured or sold under this license. The license was renewed upon its expiration and Best received the minimum royalty under it through the taxable years.

Best did not at any time sell or license his patents to parties other than corporations he controlled, nor receive royalties from other parties. Prior to 1940 he received salaries from some of these corporations.

On July 6, 1949, Best organized an Indiana nonprofit corporation known as the Best Foundation, Inc., for the following stated purposes:

A. To promote the Christian Religion as taught in the New Testament of the Bible, in the light of the Old Testament.

B. To act as a charitable organization, assisting worthy individuals, institutions, and movements by gifts, loans and otherwise.

C. To increase and disseminate knowledge in every field of legitimate endeavor, particularly in the natural sciences.

D. To endeavor to find ways to extend the useful span of human life and improve human health.

E. To seek to eradicate evils from our body politic, to fight communism and to engender patriotism.

F. To attempt, in general, to do any and all things convenient, desirable and/or necessary to make this world a better place in which to live.

G. To exercise any and all of the general powers conferred on NOT FOR PROFIT CORPORATIONS by the Laws of the State of Indiana which are hereby made a part hereof as fully and completely as though each clause thereof were copied verbatim herein, and particularly as recorded in THE INDIANA

GENERAL NOT FOR PROFIT CORPORATIONS ACT. (H. 179. Approved March 7, 1935) and all laws amendatory thereof, including the right to amend these Articles of Incorporations, to dissolve this corporation, to make and amend By-Laws in harmony therewith and to do any and all acts and deeds, desirable, necessary and/or expedient to the accomplishment of the foregoing.

Further, the certificate of incorporation provided that:

There shall be three classes of members possessing fifteen to eighteen memberships and votes as follows:

A. There shall be one class A member having 12 memberships and votes at all meetings of members.

B. There shall be one class B member having two memberships and votes at all meetings of members.

C. There shall be one class C member having one membership and vote at all meetings of members.

D. There may be from one to three additional class C members having one membership each and one vote each at each and every meeting of members.

The class A member was Best and thereby he controlled the Foundation.

On July 7, 1949, Best as first party and the Foundation as second party signed an agreement identified as "Exclusive License 7–7–49" conditionally conveying to the Foundation the exclusive right to certain inventions pertaining to a key-in-the-knob lock with push button control.

A collateral agreement signed at the same time provided, in part:

I—First Party hereby gives and grants unto Second Party the EXCLUSIVE LICENSE 7–7–49, attached hereto, and hereby made a part hereof, said license being for the full life term of the Letters Patent thereof, granting the exclusive right to make, use and vend the said inventions throughout the United States and the Territories thereof, subject to all the terms and conditions hereof and thereof.

II—Second Party shall have the right to grant an exclusive sub-license hereunder to the BEST UNIVERSAL LOCK CO., INC., a corporation of the State of Indiana with offices at 10 North Senate Avenue, Indianapolis 4, Indiana, thereby conveying to the said BEST UNIVERSAL LOCK CO., INC. any or all of the patent rights conveyed by the said EXCLUSIVE LICENSE 7–7–49 to Second Party.

III—Second Party hereby agrees to require any sub-licensee hereunder to pay a royalty to the licensor hereof, Frank Ellison Best, in the amount of $500.00 per month on the 15th day of each and every calendar month beginning on July 15, 1949, and terminating on the 15th day of the month next preceeding the expiration date of the latest Letters Patent granted or to be granted by the United States Patent Office, coming under the provisions of this EXCLUSIVE LICENSE 7–7–49.

IV—The parties hereto expressly covenant and agree that the accompanying EXCLUSIVE LICENSE 7–7–49 and this COLLATERAL AGREEMENT E–L–7–7–49, are given and entered into with the express understanding and agreement that should the Second Party, for any reason beyond the control of First Party, fail at any time in good faith to meet its financial obligations or go into receivership or voluntary or involuntary liquidations, THEN, AND IN ANY OF THE SAID EVENTS, or at anytime thereafter during the persistance [sic] of any

said condition, at the option of First Party, the license granted in said EXCLU-SIVE LICENSE 7-7-49 and all rights granted thereunder and hereunder shall forthwith cease and terminate, time being of the essence hereof, whereupon all rights granted thereunder and hereunder shall forthwith revert to the First Party as owner thereof and any sub-licensee thereunder shall thereupon and thereafter treat, and deal directly, with First Party to the entire exclusion of Second Party, time being of the essence hereof, but in no event shall the termination of the said EXCLUSIVE LICENSE 7-7-49 work at termination of any sub-license granted to BEST UNIVERSAL LOCK CO., INC., thereunder.

At the same time documents entitled "Exclusive Sub-license 7-7-49" and "Collateral Agreement E-S-L-7-7-49" were signed, conditionally conveying from the Foundation to Best Universal Lock Co., Inc., the exclusive right to make, use, and vend the inventions described. The inventions mentioned in these documents were two patents issued in 1942 on deadlocking tubular night latches, two patent applications for box strikes, and other patents maturing from these or from other inventions theretofore made by Best "pertaining to various patentable features of the KEY IN THE KNOB LOCK WITH PUSH BUTTON CONTROL." The exclusive sublicense granted by the Foundation to Best Universal Lock Co., Inc., recites, in part:

WHEREAS, The BEST FOUNDATION, Inc. is desirous of raising working capital by borrowing money on six percent and lesser percentage notes and by other evidences of indebtedness all to be amortized out in consecutive equal monthly payments of principal and interest covering such periods of time that all borrowings thus made will be amortized out within the life of this EXCLU-SIVE SUB-LICENSE 7-7-49, granted hereby; and

WHEREAS, the said The BEST FOUNDATION, Inc. has no present source of income with which to meet the said amortization payments on said borrowings as they fall due month by month;

Now, THEREFORE, in consideration of one dollar ($1.00), receipt of which is hereby acknowledged, and in further consideration of monthly royalty payments of five thousand dollars ($5000.00) per month, five hundred dollars ($500.00) of which is to be paid directly to the original licensor, Frank Ellison Best, and four thousand five hundred dollars ($4500.00) of which is to be paid directly to the sub-licensor, The BEST FOUNDATION, Inc., for each and every calendar month from date hereof to the expiration date of the latest Letters Patent, to be granted by the United States Patent Office, coming under the provisions of this EXCLUSIVE SUB-LICENSE 7-7-49, as hereinbefore set forth as are more fully set forth in the said attached COLLATERAL AGREE-MENT E-S-L-7-7-49,

We, The BEST FOUNDATION, Inc., Do BY THESE PRESENTS give and grant unto the said BEST UNIVERSAL LOCK CO., INC. an EXCLUSIVE SUB-LICENSE 7-7-49 subject to COLLATERAL AGREEMENT E-S-L-7-7-49, on each and every United States Letters Patent enumerated and set forth in said EXCLUSIVE LICENSE 7-7-49 given and granted as of this day by Frank Ellison Best, the inventor, to us, The BEST FOUNDATION, Inc. for the full life term of each and every one of said United States Letters Patent as fully and completely and to the same extent that the same has been conveyed to us by the said inventor, Frank Ellison Best.

In a collateral agreement Best Universal Lock Co., Inc., agreed to pay royalties of $500 per month to Best and $4,500 per month to the Foundation and to pay monthly amortization payments on class A notes of the Foundation if the latter defaulted in payment thereof.

In November 1949 the State of Indiana pointed out to the petitioners an apparent illegality of the foregoing agreements for failure to comply with an Indiana statute requiring filing of copies of the letters patent and an affidavit of ownership thereof. Thereupon the parties executed disclaimers of these instruments setting them aside as being of no force and effect and executed new licenses and agreements to the same effect in the State of Ohio, making them retroactive to July 7, 1949.

One activity of the Foundation was assisting religious organizations by the sale of the Foundation's notes. An offer was made that individuals could lend a sum to the Foundation which would issue its note for such amount to be amortized over 180 months with 6 per cent interest and a gift of one-half of such amount would be paid over to a designated religious organization, and that repayment of the principal sum and interest would be guaranteed by Best Universal Lock Co., Inc. Such notes were issued from July to November 1949. Some of the gifts were made by the lenders directly to the religious organizations. In other cases, the Foundation paid over the amount of the gift. Notes amounting to approximately $78,000 were issued on this basis. Organizations benefiting were American Bible Chautauqua, Memorial Tabernacle Inc., Pottstown Youth Centre Inc., Mennonite Brethren in Christ Church, Berks County Evangelistic Ass'n, Revival Tabernacle, Youth for Christ, and Englesville Gospel Chapel. From these sales $38,250.27 was contributed to these organizations. Other notes of approximately the amount of $78,000 were issued to other persons at a 50 per cent discount. The Foundation realized $78,255 and loaned $75,590.97 to Best Universal Lock Co., Inc.

The notes issued were in the following form:

AMORTIZATION NOTE OF                                      CLASS A NOTE No.____

THE BEST FOUNDATION, INC.                                 $_____

For value received, we promise to pay to the order of _____

_____ Dollars, together with any legal expense of collection and with interest at the rate of six percent per annum, amortizing the loan within _____ years by _____ consecutive monthly payments, of _____ _____ * each, beginning one month from the date hereof, mailed to the last known post office address of the holder hereof.

Issued _____ 19___   The Best Foundation, Inc.

*Final Payment $_____

Due _____ 19___   By _____

On the reverse of the note it was stated:

This is one of a series of notes that comes under the provisions of a Patent Royalty Agreement dated July 7, 1949, between The Best Foundation, Inc., First Party and Best Universal Lock Co., Inc., Second Party, an excerpt of which reads as follows:

Second Party further covenants and agrees that should First Party for any reason whatsoever, default or fail to make any monthly payment on any of the said Class A notes of First Party, when due, that Second Party will make said payment to the holder thereof upon demand without protest and charge the same to the royalty account of said First Party.

This is your guarantee that Best Universal Lock Co., Inc., will pay this obligation upon presentation, should The Best Foundation, Inc., for any reason, fail to mail your monthly amortization check on time.

In December 1949 the Indiana Securities Commission issued an order to Best Foundation, Inc., to cease and desist from the further sale of its class A amortization notes, stating that the Foundation had sold securities without having registered as a dealer and through agents who were not registered and that it had engaged or was about to engage in a course of business relating to the sale of securities which was in violation of law and would operate as a fraud upon the purchaser. Thereafter the Foundation made no further sales of amortization notes.

The Foundation kept its books upon the basis of a fiscal year ending June 30, and upon an accrual method of accounting.

In February 1951 Best and others organized a corporation named "Vigilance, Incorporated," under the laws of Delaware. The certificate of incorporation stated in part:

THIRD: The general purposes of this Corporation are to establish and operate a national educational and benevolent organization designed to inform and educate the public with respect to candidates and prospective candidates for public office or responsibility, and with respect to all issues and matters of public interest or concern, and with respect to all voting problems; and to benevolently solicit and assist desirable persons to qualify as candidates for public office or responsibility irrespective of party affiliations; and, by any and all means, to initiate, aid, further and encourage benevolent reforms of any nature whatsoever.

Under the plan of organization Best held 32 of 40 memberships and thereby controlled the corporation. No capital stock was to be issued and no dividend paid.

The Foundation supplied funds to Vigilance, Incorporated, in the amount of $32,600 in 1951, $40,701 in 1952, and $755 in 1953. In 1952, $1,000 of this was repaid.

Donald M. Best, one of the sons of Frank E. Best, worked for Vigilance, Incorporated, in 1951 at a salary, soliciting memberships in the organization and setting up county organizations.

During the fiscal year ended June 30, 1953, the Foundation paid $1,008.69 to cover expenses of Best and his family in attending a political convention in Chicago. During the same fiscal year the Foundation paid expenses of $6,301.49 for printing various personal writings of Best. Susequently Best repaid these amounts to the Foundation.

Best was interested in hydroponics, or the soilless culture of plants. He caused the Foundation to purchase land and erect buildings and pay expenses for constructing and operating a hydroponicum.

During the period July 6, 1949, to June 30, 1954, the Best Foundation, Inc., according to its books and records received funds totaling $360,810.58 from the following sources:

| | |
|---|---:|
| Sale of class A notes in 1949 | $71,908.83 |
| "Royalty" payments | 270,000.00 |
| Interest | 9,929.99 |
| Accounts payable relative to purchase of hydroponicum land | 6,250.00 |
| Donations | 670.00 |
| Conditional contribution by Frank E. Best | 2,051.76 |
| | 360,810.58 |

The receipts of the Best Foundation, Inc., were applied as follows during the period July 6, 1949, to June 30, 1954:

| | Advanced | Repaid | |
|---|---:|---:|---:|
| Petty cash | | | $100.00 |
| Cash in bank | | | 664.01 |
| Loans or advances to: | | | |
| Best Universal Lock Co., Inc. | $153,628.16 | $95,725.61 | 57,902.55 |
| Patrick Research and Development Co. | 27,726.30 | | 27,726.30 |
| Kenneth R. Best | 500.00 | 500.00 | -0- |
| Earnest and Betty Patrick | 3,876.87 | 1,000.00 | 2,876.87 |
| Other individuals | 2,506.85 | 1,006.85 | 1,500.00 |
| Expense of Vigilance, Incorporated | | | 84,506.20 |
| Travel expenses of Best and family to political national convention | | | 1,008.69 |
| Printing expense of Best | | | 6,301.49 |
| Preferred stock of Patrick Research and Development Co. | | | 23,139.07 |
| Purchase of stock of Best Aircraft Corporation | $10,007.15 | | -0- |
| Less: Repayments by Frank E. Best | 10,007.15 | | -0- |
| Payments made to reduce class A notes payable | | | 29,769.40 |
| Interest expense on class A notes payable | | | 37,114.26 |
| Fixed assets | | | 7,086.53 |
| Hydroponicum land | | | 8,750.00 |
| Hydroponicum buildings | | | 2,260.13 |
| Hydroponicum expense | | | 6,772.18 |
| Operating expenses | | | 63,332.90 |
| | | | 360,810.58 |

During the years 1951 to 1953, inclusive, Vigilance, Incorporated, received and disbursed the following amounts:

|  | 1951 | 1952 | 1953 |
|---|---|---|---|
| *Sources of receipts* | | | |
| The Best Foundation, Inc. | $32,600.00 | $40,701.00 | $755.00 |
| Miscellaneous receipts | 458.78 | 25.00 | |
| Boyd Childs—refund travel | 450.00 | | |
| Total receipts | 33,508.78 | 40,726.00 | 755.00 |
| *Disbursements* | | | |
| Petty cash fund | 100.00 | | |
| Furniture | 383.90 | | |
| Wages and salaries | 15,878.76 | 22,473.42 | 246.25 |
| Taxes—social security | 122.93 | 509.77 | 12.12 |
| Taxes—withholding | 638.60 | 2,909.00 | |
| Taxes—unemployment | | 498.12 | 423.90 |
| Stationery and printing | 2,691.07 | 223.54 | |
| Service | 224.97 | | |
| Miscellaneous expense | 1,515.12 | 1,062.61 | 117.86 |
| Postage | 56.27 | 56.27 | |
| Bank charges | | | 4.53 |
| Office supplies | 86.40 | | |
| Travel expense | 11,475.89 | 10,962.78 | |
| Telephone | 6.33 | | |
| Incorporation and qualification | 297.72 | 760.00 | |
| Federal income tax | | 31.57 | |
| Interest on income tax | | .81 | |
| Membership fees | 21.00 | | |
| The Best Foundation, Inc. | | 1,000.00 | |
| Total disbursements | 33,498.96 | 40,487.89 | 804.66 |

Vigilance, Incorporated, currently has a bank account of about $500.

Vigilance, Incorporated, issued a pamphlet explaining its purpose as "a national organization of liberty-loving, God-honoring patriots." The organization became qualified to operate in nearly all of the United States, but did not attract many persons willing to pay the $14 membership fee asked. It ceased operating in 1953.

In 1953 Best made a donation of $2,051.76 to the Foundation with the condition that if the Foundation was not exempt under section 101(6) from income tax, the amount was to be turned over to some tax-exempt organization designated by Best.

The minutes of a special meeting of the board of directors of the Foundation on September 21, 1950, at which Best and Henry L. Pritchett, constituting a quorum of the board, were present, state:

Mr. Best recounted that the corporation is the owner of a promissory note with a face value of $15,000 bearing interest at the rate of six percent (6%), made by Earnest H. Patrick and Betty J. Patrick on January 19, 1950, which note was made payable to the Best Universal Lock Co., Inc. and later sold by that corporation to The Best Foundation, Inc. Mr. Best further stated that, although this promissory note is owned by the Foundation, it is now in the possession of Paul E. Blackwell of 1003 Security Trust Building, Indianapolis, Indiana.

Mr. Best thereupon stated that Patrick Research and Development Laboratories has been adjudged bankrupt, and is now in process of liquidation, and that an amended plan of arrangement is about to be presented to the Referee in Bankruptcy, under which plan of arrangement, if accepted, the said laboratories will be incorporated under the Indiana General Corporation Act.

He further stated that, subsequent to the bankruptcy of Patrick Research and Development Laboratories and, on the fourteenth day of September, 1950,

the Foundation accepted a promissory note in the amount of one thousand dollars ($1,000.00) signed by Betty J. Patrick and due six months from date of acceptance at six percent (6%) interest.

Mr. Best thereupon made a motion that The Best Foundation, Inc.:

1. Assist the bankrupt and any corporation formed by said bankrupt, in every way it can, including the loaning of money, the guarantying and/or purchasing of accounts and the rendering of services and aid of any kind and nature which in the discretion of the President may seem advisable;

2. Take notes of or stock in said corporation in an amount equivalent to monies owing to the Foundation by Earnest H. Patrick and/or Betty J. Patrick in lieu of such indebtedness;

3. Subscribe to and purchase stock, the amount of such subscription to be discretionary with the President, but in no case in excess of fifty thousand dollars ($50,000).

The motion was seconded, and unanimously carried.

On November 26, 1952, Best and the Foundation agreed to a modification of the 1949 licenses changing the conditional grant to an irrevocable one and canceling paragraphs II and IV of the collateral agreement quoted above (p. 6).

The Foundation paid all installments on its class A notes becoming due in the taxable years.

The Best Foundation, Inc., was not operated exclusively for religious, charitable, scientific, or educational purposes in any of the fiscal years ended in 1950, 1951, 1952, 1953, or 1954.

Best Lock Corporation's books were kept and its income tax returns made on an accrual basis of accounting.

The patents involved herein were Best's ideas and were applied for and issued in his name.

Best received Patent No. 2,440,434, dated April 27, 1948, a basic patent involving a multiplicity of cores that would complement a certain housing.

Some 3,600 persons other than Best held stock in Frank E. Best, Inc., and over 1,300 others held stock in Best Lock Corporation.

Best Lock Corporation's sales and net income reported on its returns in the taxable years were:

|  | Gross sales | Net income |
| --- | --- | --- |
| 1949 | $637,052.79 | $30,819.06 |
| 1950 | 765,794.19 | 46,504.45 |
| 1951 | 1,070,216.68 | 110,913.55 |
| 1952 | 1,005,337.59 | 52,820.43 |

Best Lock Corporation's income tax return for 1949 showed, as of January 1, assets of $1,257,459.02, listing plant and machinery at $526,920.17 less reserve for depletion of $458,051.13, and patents and licenses valued at $719,115.25, less reserve for depletion of $109,967.24. Liabilities listed amount to $225,463.65, capital stock $1,406,911.18, and deficit in earned surplus, $374,915.81.

No formal dividends were declared at any time by Best Lock Corporation, Best Universal Lock Co. (Washington), or Frank E. Best, Inc.

Best Lock Corporation specializes in providing a locking system for a plant, school, or institution requiring many locks and master key controls. During the taxable years the production of lock cores remained fairly constant and all lock cores produced were sold. During and immediately prior to the taxable years the tendency of architects and engineers has been increasingly to prescribe key-in-the-knob locks for new construction. The corporation's competitors have produced key-in-the-knob locks. Best had not produced a key-in-the-knob lock during the taxable years and the corporation has lost a number of possible contracts because it could not supply this lock. Best first made application for a patent on such a lock in August 1955, but did not complete a model to his own satisfaction until 1956. Without this type of lock the Best system was not complete. The key-in-the-knob lock constructed by Best was an improvement upon, or an addition to, the patents and patent applications described in License #4 granted by Frank E. Best, Inc., to Best Lock Corporation and relates and pertains to the locking contrivances incident to the manufacture, use, and sale of the Best Universal Locking System in the United States.

Pursuant to the Exclusive License 7–7–49, or the substituted license of December 1949, Best Lock Corporation paid $3,000 to Best and $27,000 to the Foundation in 1949 and $6,000 to Best and $54,000 to the Foundation in each of the years 1950, 1951, and 1952. These payments were not ordinary and necessary expenses of doing business in those years.

Best Lock Corporation recorded as catalog expenses the amounts of $27,864.75 in 1951 and $20,173.99 in 1952 in connection with a catalog copyrighted by Best Universal Lock Co., Inc., and published in 1953. Best Universal Lock Co. (Washington) published one catalog in 1924 and another in 1925. Later it published another identified as Catalog Number Ten. A catalog printed generally from the same plates was later issued by Best Universal Lock Co., Inc. (Indiana). The 1953 catalog was new. In 1956 a revision of this catalog in looseleaf form was made, largely from the 1953 plates. No price lists were contained in the 1953 or 1956 catalogs. The catalog published in 1953 was not in use in 1951 or 1952 and had a useful life beyond the year of publication. The amounts expended in 1951 and 1952 by Best Lock Corporation for preparation of this catalog were not ordinary and necessary expenses of carrying on its business in the taxable years.

Pursuant to the 1949 licenses Best received $3,000 in 1949 and $6,000 in each of the years 1950, 1951, 1952, and 1953, and the Foundation

received $27,000 in 1949, and $54,000 in each of the years 1950, 1951, 1952, and 1953 from Best Lock Corporation. These amounts were constructive dividends from Best Lock Corporation to Frank E. Best.

OPINION.

Best Lock Corporation claimed deductions as ordinary and necessary business expenses of the amounts paid to Best and the Foundation called for by the 1949 licenses and collateral agreements relating to the key-in-the-knob lock. The respondent disallowed these deductions and this is assigned as error.

In *Thomas Flexible Coupling Co.* v. *Commissioner*, 158 F. 2d 828 (C. A. 3, 1946), certiorari denied 329 U. S. 810, affirming a Memorandum Opinion of this Court dated May 31, 1944, it was held that where an inventor, for consideration in stock and royalties, had assigned patents to a corporation and agreed to assign to it all future improvements, and some years later patents on improvements were issued to the inventor and assigned to the corporation for cash and additional royalties, there was no consideration for the additional royalties, and that they were voluntary payments which were not deductible as ordinary and necessary business expenses of the corporation. In the Memorandum Opinion of this Court we quoted with approval an explanation for this viewpoint stated in *Aspinwall Manuf'g Co.* v. *Gill*, 32 F. 697, 700–701 (C. A. 3, 1887) :

* * * where a man purchases a particular machine secured by a patent, and open to an indefinite line of improvements, it is often of great consequence to him that he should have the benefit of any future improvements that may be made to it. Without that, the whole value of the thing may be taken away from him the next day. A better machine might be made by the inventor, and sold to another party, which would make the machine acquired by the first purchaser entirely useless. These things happen every day. And hence it has become the practice, in many cases, to stipulate for all future improvements that may be made by the same inventor upon any particular machine which he induces a party to purchase from him, sometimes by way of license to use such improvements, and sometimes by way of purchase and ownership thereof. Where the inventor is connected in business with the party making such stipulation, or is interested in the profits arising from the business in which the invention is used, the arrangement seems to be altogether unobjectionable. But such a connection or interest does not seem to be necessary to the validity of such bargains. If based upon a valuable consideration, they are sustained as collateral or incidental stipulations connected with the conveyances of a principal subject.

In the present case when Best organized the first of his several corporations, the one now known as Frank E. Best, Inc., he assigned to it his first patents in exchange for the corporation's stock. This corporation later granted a license to Best Universal Lock Co. (Washington) and in 1928 a new License #4 to the petitioner corporation now named Best Lock Corporation. In this license it is stated:

This license #4 includes rights under all United States patents and patent applications now or hereafter owned or controlled by Frank E. Best, Inc., *and amendments, additions to, or improvements upon said patents and patent applications;* provided the above mentioned patents, patent applications, amendments, additions and improvements *relate and pertain to the locking contrivances,* service devices and manufacturing machinery *incident to the manufacture, use, exploitation and sale of the Best Universal Locking System* in the United States of America. [Emphasis supplied.]

The catalog issued by Best Universal Lock Co., Inc., in 1956 was in looseleaf form and there was testimony on behalf of the petitioners that the key-in-the-knob lock could be added to that catalog. There was testimony that this company had lost several possible contracts for installing its locking system in certain new plants because it did not have a key-in-the-knob lock which was called for in the specifications and that the competitors who could provide this type of lock were getting these contracts. Several competitors had developed a key-in-the-knob lock. Walter E. Best, vice president of this petitioner and one of the sons of Frank E. Best, testified that the key-in-the-knob lock is what most of the architects and building owners want and that "[w]e do not have a complete system without this. With this, our system will be complete again." This evidence is convincing that this invention is part of the Best Universal Locking System and is an addition or improvement within the terms of the agreement quoted above.

The petitioners object that Best was not a party to the agreements in License #4 whereby Frank E. Best, Inc., licensed Best Lock Corporation to manufacture and sell locks under these patents and any amendments or improvements upon them then or thereafter owned or controlled by the licensor. They imply, although they do not allege, that Frank E. Best, Inc., was without authority to license these particular improvements or additions to the patents listed in License #4. This right would depend upon the terms of the original licenses or assignments from Best to Frank E. Best, Inc. These documents are not in the record. If the original grant of authority from Best to Frank E. Best, Inc., did not authorize the latter to license the use of improvements or additions to the patents originally transferred, it was incumbent upon the petitioners, having the burden of proving error in the respondent's determination, to show this. They have not met this burden. We would not be warranted in assuming that Frank E. Best, Inc., granted a license including improvements and amendments without authority to do this, particularly since Best was at all times in control of all these corporations. The License #4 to this petitioner should be regarded as including rights to all amendments or improvements, and the inventions embodied in the key-in-the-knob lock were available to this petitioner under such license and without

payment of the additional royalties provided in the 1949 license agreements. *Thomas Flexible Coupling Co.* v. *Commissioner, supra.*

It follows that the royalties called for in the 1949 licenses and collateral agreements were not required of this petitioner. They were voluntary payments made without consideration and were not ordinary and necessary business expenses deductible by it in the taxable years.

The respondent treated the expenses paid in 1951 and 1952 by Best Lock Corporation in preparing a catalog published in 1953 as capital items and denied deduction of such amounts as business expenses for 1951 and 1952. The petitioner relies on *E. H. Sheldon & Co.* v. *Commissioner,* 214 F. 2d 655 (C. A. 6, 1954), reversing 19 T. C. 481. There the Court of Appeals took the view that payments for preparing a catalog subsequently published were similar to advertising expenses and deductible when paid even though their effect might have a useful life of indefinite duration in the future. A similar result was reached in *Harper & McIntire Company* v. *United States,* 151 F. Supp. 588 (D. Iowa, 1957). In the present case the catalogs previously published by Best Lock Corporation and its predecessor were issued at irregular intervals and largely made from the same plates. The 1953 catalog was new and was used until 1956, when it was revised and the 1953 plates were used again. It has not been shown that these plates are not available for further use. The 1953 catalog had no effect on earning the income derived in 1951 and 1952 and when issued had a useful life of more than 1 year. The amounts paid in 1951 and 1952 to produce it were capital items contributing to earning income for several years in the future and not ordinary and necessary expenses of doing business in 1951 and 1952. They are not deductible. We have carefully reexamined our position on this question in the light of the decision of the Court of Appeals in the *Sheldon* case, *supra,* and if that case is not distinguishable on the facts, we adhere to the views expressed in our Opinion in 19 T. C. 481, with all due deference to the Court of Appeals for the Sixth Circuit.

The Foundation contends that it is an organization exempt from income tax, pursuant to section 101 (6) of the Internal Revenue Code of 1939, as being a corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual and no substantial part of the activities of which consists of attempting to influence legislation.

This petitioner was organized under the laws of Indiana as a nonprofit corporation. It has no stock, but has classes of member-

ships under which Frank E. Best has control of its operations. The Foundation assisted certain churches and religious organizations financially by the sale of its notes, one-half of the price of which was collected by it and one-half given to the churches or youth organizations, while the Foundation agreed to repay the full amounts to the donors with 6 per cent interest in installments over a 15-year period. Such notes were sold between July and November 1949. The Foundation issued notes on this basis in the face amount of about $78,000.

The Foundation also made advances to a corporation, Vigilance, Incorporated, formed by Best and his associates with the stated purpose of providing an information service to voters in the United States, and provided funds to establish and operate a laboratory for the purpose of scientific research in the soilless culture of plants. It is contended that these are religious, educational, and scientific purposes which qualify the Foundation for exemption.

The Foundation filed tax returns and at the same time filed applications for exemption as an organization exempt pursuant to section 101 (6). The respondent determined that the Foundation was not exempt in any of the taxable years. To qualify for exemption an organization must be devoted to one or more of the purposes specified in section 101 (6) exclusively, and the presence of a single contrary purpose, if substantial in nature, will disqualify the organization. *Better Business Bureau* v. *United States*, 326 U. S. 279 (1945).

As the respondent points out, the Foundation was organized in such a fashion that Best held control of its activities and expenditures; it was operated to carry out projects in which Best was interested; and some of its funds were expended for the benefit of Best or members of his family.

A considerable sum was loaned to Patrick Research and Development Co., or to its principal stockholders, Earnest and Betty Patrick. Best said he was aware that these people were in financial difficulties and went to their assistance. He caused Best Lock Corporation to lend money to the individuals or their corporation on a note and subsequently transferred the note to the Foundation. Only a small payment was subsequently made on the debt. Also stock of the Patrick corporation was purchased by the Foundation. The record does not reveal the connection of the borrowers with Best Lock Corporation or disclose any business purpose of the latter in making such a loan. Nor is it explained why the Foundation would take over such an obligation at par and buy stock in the corporation, except for Best's statement that he went to the assistance of these parties. The only conclusion apparent from the record is that these disbursements represent a personal favor by Best. Over $50,000 was devoted

to this objective, which is approximately 15 per cent of the total expenditures of the Foundation in the taxable years. This is a substantial amount devoted to a personal purpose.

Expenditures were made for constructing a hydroponicum. Best testified that he was anxious to see progress in this as he believes he has found what causes us to grow old and that he has found how to remedy it. He desired to carry on a scientific study of the soilless culture of vegetation and set out to do this through the Foundation. Land was purchased, buildings started, and materials collected and a chemist was employed for a time. This was to carry out a personal hobby of Best.

The issuance of some of the notes by the Foundation was intended to raise money for Best Universal Lock Co., Inc., and to provide financial assistance to religious organizations. Approximately $78,000 in notes, or about half the total, was issued at a 50 per cent discount to people who gave the discount to religious organizations. The other half of the notes was issued at a 50 per cent discount and no explanation is given as to the identity of the recipient of these notes or of their connection with the business of Best Lock Corporation or the Foundation. The purpose of this is not revealed. These lenders would ultimately receive double their loans plus interest. It was assumed that the notes could later be repaid out of the royalties. This is a substantial activity and there is no showing that it is within the purposes of section 101 (6).

Best also made some use of Foundation funds for family purposes. In the fiscal years ended in 1951 and 1952 money was lent to a son, Kenneth R. Best, and other funds were used to acquire stock in Best Aircraft Corporation for the benefit of a son interested in aviation. These amounts were repaid by Best to the Foundation before June 30, 1953. In the fiscal year ended in 1953 the Foundation paid $1,008.69 upon travel expenses of Best and his family in attending a political convention and $6,301.49 for printing certain of Best's writings. Subsequent to the taxable years involved Best repaid these amounts to the Foundation.

There were substantial activities and expenditures of the Foundation which were outside those specified in section 101 (6). We cannot say that part of the net earnings did not inure to the benefit of Best when they were applied to his personal purposes. See *Scholarship Endowment Foundation* v. *Nicholas*, 106 F. 2d 552 (C. A. 10, 1939). Accordingly, the respondent did not err in determining that the Foundation was not exempt pursuant to that section.

The respondent determined that the amounts paid by Best Lock Corporation to the Foundation pursuant to the 1949 licenses and

collateral agreements were taxable income to Best. The sole asset and only prospective source of income to the Foundation was the license granted it by Best to make, use, and vend certain of his inventions. The Foundation granted an exclusive sublicense to Best Lock Corporation to use these inventions upon payment of specified royalties, part to Best and part to the Foundation. This was Best's arrangement, to assign to the Foundation a part of the royalties expected to be derived from these patents or contemplated patents and retain control over the Foundation so that he could direct the expenditure of these funds. Best Lock Corporation had substantial earnings in these years, 1949 to 1953, inclusive, and when these voluntary payments are restored to income, the earnings and profits were sufficient to permit distribution of dividends in these amounts. No formal dividends were declared at any time by any of Best's corporations. In *Helvering* v. *Horst*, 311 U. S. 112 (1940), it was explained that income is realized by an assignor when he "who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants." In *Commissioner* v. *Sunnen*, 333 U. S. 591 (1948), it was stated that "[t]he crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes." The control which Best retained was complete. These payments to Best and the Foundation made under the terms of the 1949 licenses were distributions out of earnings and profits of Best Lock Corporation and therefore dividends to Best. He was owner of some shares of Best Lock Corporation and trustee as to other shares for Best Universal Lock Co. (Washington). Frank E. Best, Inc., owned the controlling interest in this corporation and in turn was controlled by Best, individually. These amounts may, if necessary, be traced through this sequence as ultimately being constructively received as income to Best. See *United Dressed Beef Co.*, 23 T. C. 879 (1955); *Lengsfield* v. *Commissioner*, 241 F. 2d 508 (C. A. 5, 1957), affirming T. C. Memo. 1955–257; *Simon* v. *Commissioner*, 248 F. 2d 869 (C. A. 8, 1957), reversing T. C. Memo. 1955–194 on another point; *Drybrough* v. *Commissioner*, 238 F. 2d 735 (C. A. 6, 1956), remanding 23 T. C. 1105 on another point; and *Dawkins* v. *Commissioner*, 238 F. 2d 174 (C. A. 8, 1956), modifying T. C. Memo. 1955–178 on another point.

Best argues that the respondent has at no time disallowed the royalty payments of $15,000 per year provided in License #5, relating to patents on a dynamic rectifier, as business expenses of Best

Lock Corporation or treated them as dividends to him and that consistent treatment should be accorded the payments called for in the 1949 licenses which are similar in terms. It is well settled that the respondent is not bound by prior rulings and may treat similar tax events differently or even treat the same issue differently in different taxable years.

Since the Foundation is not exempt under section 101 (6), Best is not entitled to deduct in 1953 the conditional contribution made to it in that year.

Upon concluding that the Foundation was not entitled to exemption in the taxable years, the question of the extent of its tax liability must be considered.

As to its income, we have held that the amounts paid to the Foundation by Best Lock Corporation as royalties were taxable to Best as dividends distributed to and constructively received by him. These payments to the Foundation must therefore be regarded as gifts or contributions to capital from Best and not as income taxable to the Foundation. The item of $2,051.76 identified as a conditional contribution by Best and the $670 item of donations are likewise gifts or capital contributions to the Foundation. The sum realized by sale of the notes was accompanied by the issuance of obligations in a greater amount and hence does not constitute income subject to tax. The item of accounts payable relative to hydroponicum land appears to be an offset against an expenditure involved in this transaction. This leaves interest as the sole income item in the Foundation's receipts.

The operating expenses which are not challenged as to nature or amount exceed the interest income in each fiscal year. From this it appears that the Foundation had no net taxable income in the fiscal years involved. It is not necessary therefore to decide issues raised as to deductions, or as to borrowed capital.

Reviewed by the Court.

> *Decisions will be entered for the respondent in Docket Nos. 54550, 54567, 60805, and 64623. Decisions will be entered under Rule 50 in Docket Nos. 54571 and 62155.*

PIERCE, *J.*, dissenting: On the issue pertaining to petitioner's costs of preparing and publishing a catalog, I think the present case is not distinguishable on its facts from *E. H. Sheldon & Co.* v. *Commissioner*, 214 F. 2d 655 (C. A. 6, 1954), reversing 19 T. C. 481; and that the decision of the Court of Appeals in said case should be followed here.