**POLAK'S FRUTAL WORKS, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**UNITED STATES of America,**
Plaintiff,

v.

**POLAK'S FRUTAL WORKS, INC.,**
Defendant.

United States District Court
S. D. New York.
Sept. 23, 1959.

522

I. Herman Sher, New York City, for taxpayer.

Arthur H. Christy, Morton S. Robson, New York City, for United States.

THOMAS F. MURPHY, District Judge.

Plaintiff taxpayer seeks a return of income and excess profit taxes which it claims were illegally assessed and paid for the year 1944. The claim arises because the commissioner disallowed a deduction of $160,000 as an ordinary and necessary business expense which the taxpayer had accrued on its books.

Although the sole issue is whether or not the deduction was proper, a massive stipulation of facts has been submitted, most of which has little or no relevancy to the principal issue.

Plaintiff was incorporated in New York in 1921. From that time through 1944 it was a wholly owned subsidiary of Polak's Frutal Works, N.V., a Dutch corporation which owned all its common stock. The Dutch corporation engaged in the manufacture and sale of essential oils and related products throughout the world. The plaintiff taxpayer was formed for the purpose of handling sales of the parent's product in the United States. Similar subsidiaries were formed in England and France and all were furnished merchandise by the parent at cost.

At the advent of the second World War the Dutch corporation, seeing the handwriting on the wall, sent its representatives to New York with its secret formulae and technical know-how, together with its list of world customers, and in effect continued the Dutch business in New York nominally in the name of the plaintiff taxpayer with the result that the Dutch company became merely a name. From that time until the resolution of the Board of Directors dated November 1, 1944, there was no arrangement or understanding with reference to any compensation to be given to the Dutch company for the use of such formulae, know-how and list of worldwide customers. Nor was there need for any understanding or agreement since for practical purposes the Dutch company was defunct. It had no assets and the Dutch government in exile had established rigorous controls of assets of all Dutch corporations. Since the principals in both companies were the same, nothing could be gained by entering into a formal or informal agreement. The Dutch company's principal officers continued in control.

As a result the taxpayer, commencing in 1940, engaged in the manufacture and sale of essential oils, using the secret formulae and processes in selling to the Dutch company's customers. Its business increased sizeably. However, in 1944, a year in which its excess profit taxes promised to be unusually high, it was obvious that something had to be done since it would be unconscionable to pay the United States Government a large amount of taxes on such profits. The evidence shows that on September 30, 1944, Alfred Goudsmit, a director both of the taxpayer and the Dutch company and a close friend of the Polak family, the original stockholders, wrote a letter to Jacob Polak in which he expressed concern over the fact that the Dutch company had never been compensated for the benefits it conferred on the

taxpayer and requested a meeting of the Board of Directors. The Board of Directors allegedly met on October 9, 1944, to consider this pressing problem. Thereafter a committee was formed to explore the problem and report. On November 1, 1944, according to the books of the corporation the Board of Directors resolved to set up retroactively a credit in the name of the Dutch company equal to 10% of the taxpayer's export sales for each of the years 1940 to 1944, inclusive. This sum, according to the resolution was to be full compensation to the Dutch company "for (1) the use of the processes and formulae, and (2) for the customers turned over by the Dutch company to the [taxpayer]". The amount accrued, pursuant to such resolution, was $159,653.86. It was alleged to be an ordinary and necessary business expense for the year 1944. Incidentally, it automatically caused a reduction of income and excess profit taxes for that year of $127,757.72. As might have been expected this sum accrued on its books as aforesaid was never paid to the Dutch company. It remained on the books as an accrued item until 1948 when by bookkeeping entry it was transferred to capital surplus.

It was the commissioner's refusal to allow this bookkeeping entry to be treated as a legitimate, ordinary and necessary business expense that gives rise to this action.

We are convinced that the commissioner was correct; that it was not an ordinary and necessary business expense and that the complaint should be dismissed. We are convinced, also, that there never was a Board of Directors meeting on November 1, 1944, and that the minutes were antedated at or about the time of the preparation of the 1944 income tax return. We come to this conclusion because it is obvious to us that no entry was made until the taxpayer received on March 20, 1945, a license from the Treasury Department to make the credit. Although this practice of accrual accounting procedure might be acceptable practice we have grave doubts

that the Board of Directors met on the date set forth in its resolution. In saying this we are conscious that there is no evidence to the contrary.

██ It is axiomatic that under § 23 (a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a), for payments to be deductible, the burden is upon the taxpayer to establish that they were both ordinary and necessary. We find as a fact that the alleged expense was most extraordinary and completely unnecessary. It was a completely voluntary and wholly unsolicited assumption of a liability that was never demanded or incurred. Cf. Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

██ Although the courts have adopted no hard and fast rule, the summary in the leading text book would appear to encompass the meaning of the statute:

"An expenditure may not be deductible even though expedient or highly commendable from an ethical standpoint, or even required under a contractual obligation. Normally, an expenditure is not 'ordinary' if no liability exists and there is neither demand nor acceptance of any consideration in return for such expenditure."

4 Mertens on Federal Taxation, § 25.09 at pages 23–24.

There is even some doubt as to whether the taxpayer intended ever to pay the accrued liability. From the deposition of Mr. Goudsmit it would appear that the parties intended to wait before deciding if and when payment should be made. It was dependent upon world developments.

██ If more were necessary we agree with the government that even if the accrual was legitimate it represented the payment for a capital asset and as such could not be deducted as a business expense. See Jones' Estate v. Commissioner, 5 Cir., 1942, 127 F.2d 231; Imperial Type Metal Co. v. Commissioner, 3 Cir., 1939, 106 F.2d 302.

Finally, there was no evidence to support the deduction for five years. At

524

most it could be related only to the year 1944.

Accordingly, the taxpayer's complaint is dismissed and judgment granted to the government.

This opinion is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

At the beginning of trial the government's complaint in this consolidated action was dismissed on the ground that it had been compromised. In the instant action the government's counterclaim and affirmative defenses were dismissed for failure of proof.