**POLAK'S FRUTAL WORKS, INC.,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 278, Docket 26021.

United States Court of Appeals
Second Circuit.

Argued May 13, 1960.

Decided July 21, 1960.

I. Herman Sher, New York City, for plaintiff-appellant.

Morton S. Robson, Chief Asst. U. S. Atty., New York City (S. Hazard Gillespie, Jr., U. S. Atty., for the Southern Dist. of New York, and Mark I. Cohen, Asst. U. S. Atty., New York City, on the brief), for defendant-appellee.

Before CLARK, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

Appellant, Polak's Frutal Works, Inc. (Polak's), a New York corporation, appeals from a judgment dismissing its complaint in an action to recover income and excess profits taxes paid for the year 1944. The claim is based upon the disallowance by the Commissioner of Internal Revenue of amounts ($159,653.86) deducted from 1944 income as ordinary and business expenses.

Most of the facts relating to the background and stock ownership of the various members of the Polak family are irrelevant to a determination of the narrow issue here presented. The few salient facts may be briefly summarized.

In 1914 Polak's Frutal Works, N. V. (N. V.) was incorporated in Holland. There it manufactured and sold throughout the world essential oils, flavoring extracts, perfume compounds and various synthetic materials. In 1921 Polak's was organized in New York to handle the sale of N. V.'s products in the United States and Canada. All the common stock of Polak's was owned by N. V. and the products were supplied to Polak's by N. V. at cost.

Anticipating the events occasioned by the outbreak of the Second World War in 1939, members of the Polak family in 1939 and 1940 came to the United States bringing with them their knowledge of formulas and manufacturing processes. In May 1940 Holland was invaded, N. V.'s plant was seized by the Germans and for all practical purposes N. V. became extinct. However, using Polak's for manufacturing purposes, the Polaks in this country during the years 1940–1944 prospered from the business formerly carried on in Holland and Polak's profits increased substantially. Taxes also increased substantially, largely because of the enormous expenditures for our military forces which, in turn, were so ably protecting our freedoms including the freedom of Polak's to continue its business.

In November 1944 Polak's at a Board of Directors meeting adopted the following resolution:

"That, Polak's Frutal Works, Inc. pay to the N. V. a commission of 10 per cent of the export sales volume transacted by the New York corporation in each year since January 1, 1940, as full compensation for the

use of the processes and formulae and for the customers turned over by the N. V. to the Incorporated."

In March 1945 Polak's fixed this voted 10% for the previous five years at $159,653.86 and credited this amount on its books to N. V. No payment was ever actually made and as of December 31, 1948 the Secretary of Polak's in charge of bookkeeping and tax matters, amongst other duties, "was told or instructed as per December 31, 1948 to credit the $159,000 to surplus of the plaintiff [Polak's]."

No useful purpose will be served by any endeavor to analyze motive or even to discuss whether the deduction in question would fall within the category of tax avoidance or evasion. The problem need not be thus complicated. The statute (Section 23, Internal Revenue Code of 1939, 26 U.S.C.A. § 23) provides for the deduction of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." No part of $159,653.86 or any other amount was "paid or incurred" during any one of the years in question. There is no proof of any commitment, written or oral, to pay any commission whatsoever for the purposes stated in the directors' resolution. The book entry cannot be characterized even as a voluntary assumption of a liability because there was no liability. Quite apart from the fact that Polak's had been enjoying for almost 20 years these benefits without a 10% commission, it is scarcely conceivable that during the five years of merged operations some financial notice would not have been taken of any such liability if it had in fact existed.

■■ To be deductible as a business expense the payment must be both "ordinary" and "necessary." "Ordinary" does not require that "the payments must be habitual or normal in the sense that the same taxpayer will have to make them often" (Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L.Ed. 212). Nevertheless, the payments must be tested by normal business standards and practices. If in 1940 N. V. had agreed to furnish to Polak's its formulas and its manufac-

turing technical knowledge on an annual basis or a term of years in consideration of a payment of 10% of gross or net sales, such an annual payment might well have fallen into the category of "deductible expense." However, no such agreement was made. When in November 1944 Polak's agreed to pay commissions for the preceding five years the payment was not in satisfaction of a legal obligation.

As the Supreme Court said in Welch v. Helvering, 290 U.S. 111, 116, 54 S.Ct. 8, 10, 78 L.Ed. 212, "Many cases in the federal courts deal with phases of the problem presented in the case at bar. To attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with border-line conclusions." Quite analogous in principle, however, is Thomas Flexible Coupling Co. v. Commissioner of Internal Revenue, 3 Cir., 1946, 158 F.2d 828, 829, in which royalties were paid under a 1939 contract for patent improvements which had already been legally assigned pursuant to a 1920 contract. The Tax Court in disallowing the payments as "ordinary and necessary business expenses" had "concluded that the petitioner was under no legal obligation to pay the royalties and that there was no showing of any exceptional business necessity for making such payments" (at page 830). The Court of Appeals affirmed.

Mertens well states the principle as follows:

"An expenditure may not be deductible even though expedient or highly commendable from an ethical standpoint, or even required under a contractual obligation. Normally, an expenditure is not 'ordinary' if no liability exists and there is neither demand nor acceptance of any consideration in return for such expenditure." (4 Mertens on Federal Taxation, § 25.09 at pages 23–24.)

■■ The district court found [176 F.Supp. 523,] "as a fact that the alleged expense was most extraordinary and completely unnecessary. It was a completely voluntary and wholly unsolicited assump-

tion of a liability that was never demanded or incurred." Since "the burden is on the taxpayer to establish that they [the payments] were both ordinary and necessary," the court correctly dismissed the taxpayer's complaint and granted judgment to the government.

The judgment is affirmed.